## PACIFIC MUTUAL LIFE INS. CO. v. TETIRICK, Gdn.

No. 26425. Dec. 20, 1938.

Rehearing Denied April 4, 1939.

Application for Leave to File Second Petition for Rehearing Denied May 2, 1939.

Embry, Johnson, Crowe & Tolbert and Settle & Clammer, for plaintiff in error.

B. A. Hamilton, Hal Crouch, and Philip N. Landa, for defendant in error.

WELCH, J. Plaintiff and defendant were in serious disagreement as to plaintiff's claimed right to collect monthly disability payments on an insurance policy. At a conference on the matter each earnestly and vigorously presented his theory and contentions. The plaintiff insisted that the monthly payments be made and defendant insisted that the policy be canceled. No agreement was reached and plaintiff terminated the conference.

Then plaintiff filed this suit, claiming in effect that he had been convalescing from a nervous breakdown; that the defendant in the conference attempted intimidation and threats, paced up and down in the room, and talked loudly, and in a boisterous and obstreperous manner; that on account of his physical and nervous condition the actions of defendant were seriously harmful to him and caused a serious relapse, destroying or delaying his chance for recovery,

and rendered him totally and permanently disabled physically. He sought damages in substantial amount, and won a verdict and judgment, from which defendant appeals.

As we view the case, we must reverse for the erroneous instructions given, and since retrial must follow, we do not further discuss the facts nor the weight or sufficiency of the evidence on the many points involved.

Plaintiff's claimed cause of action was based on the alleged facts that defendants violated his sick room, and by oppressive demands forced wrongful entrance therein, and then willfully, maliciously, and oppressively so conducted themselves as to cause the serious consequences stated.

The substantive instruction advising the jury of the essential proof or findings to justify a verdict for plaintiff reads as follows:

"You are instructed that if you find and believe from a preponderance of the evidence that the defendant knew that the plaintiff was sick and was suffering from a nervous breakdown and was improving and convalescing from said nervous breakdown and the said defendant Buerkle knew and the defendant, Pacific Mutual Life Insurance Company knew, through its agents acting within the scope of their employment by the defendant, Pacific Mutual Life Insurance Company, of the plaintiff's condition and were advised by his physician not to discuss any business with him and in spite of said fact, if you find the same to be a fact, said S. M. Murrell and defendant Carl Buerkle did enter said room of the plaintiff and demanded of him the policy of insurance and insisted upon cancellation thereof and served him with a notice of cancellation and tendered to him money as return of premiums, and talked in a loud, boisterous and obstreperous manner and paced up and down the sick room, and attempted to intimidate and threaten the plaintiff, and that the said acts on the part of said S. M. Murrell and Carl Buerkle were the proximate cause of plaintiff William Francis Brewer suffering a relapse and were the proximate cause of William Francis Brewer's recovery being delayed or retarded or his chances of recovery lessened, then in that event the· plaintiff is entitled to recover damages."

While the court in the opening instruction, in defining the issues, quoted from the pleadings and advised the jury that plaintiff's claim was based upon the allegation of damages resulting from willful and malicious conduct, this instruction directed a verdict for plaintiff, merely on a showing of certain acts, not necessarily unlawful in themselves, not calculated under normal circumstances to produce any dire consequences, and without mention of any malice, or such knowledge as would make of such conduct any serious and willful imposition upon plaintiff; nor does such instruction make any mention of the gross negligence or willful disregard of the condition of plaintiff as might, upon proper fact showing, make defendant liable for all consequences of the acts. So, under this instruction, the jury might have assessed large damages against defendant on account of acts, not necessarily unlawful in themselves, done without any malice or improper intent or motive, without apprehending that such acts might cause dire results on account of the extraordinary condition of plaintiff, and without any such wanton disregard of plaintiff's apparent condition or such gross negligence as might make defendant liable for whatever injury resulted. This may account for the quite substantial verdict rendered for plaintiff.

While all persons are held responsible for the natural or normal consequences of their acts, this instruction omits those essential elements which would make this defendant liable for the most extraordinary result of total and permanent physical disability of plaintiff, if the same exists, and if it did result merely from the acts stated in this instruction, and without any wrongful intent or wrongful motive, or wantonness or willfulness or gross negligence.

No other instruction in any manner directs that the verdict may go for plaintiff only if the jury finds the existence of the malice, or motive, or wantonness, or wrongdoing alleged by plaintiff, or such gross negligence or willful disregard for consequences as might, with proper fact showing, render defendant liable.

We must conclude that this instruction is erroneous, and is not cured by any other instruction. We cannot say from the whole record that the issues were tried and determined in fairness and justice. We cannot say that no injustice was done defendant, and we therefore find no basis whatever for application of the harmless error doctrine. However grave may be the condition of plaintiff, we cannot escape the conclusion that the trial court was led into reversible error in this instruction, so permitting the jury to improperly fix on defendant this severe liability. We are impressed with the thought that such verdict would not have been returned, but for the erroneous requirement of this instruction. We must reverse the judgment and remand

the cause for a new trial, and it is so ordered.

CORN, GIBSON, and DANNER, JJ., concur. OSBORN, C. J., and DAVISON, J., concur in syllabus and conclusion. BAYLESS, V. C. J., and RILEY and HURST, JJ., dissent.

DAVISON, J. (specially concurring). I concur in the conclusion and result of the decision rendered in the present case, but I am of the belief that the opinion should contain a more thorough discussion of the issues involved than is presented in the majority view.

The appellant raises certain fundamental questions based upon alleged errors which have been adequately preserved for review by this court, and these questions, if decided in its favor, would entitle it not only to a reversal of the trial court's order overruling its motion for a new trial, but would warrant a reversal of the judgment and a dismissal of the cause. No specific mention of these questions is contained in the majority opinion.

The first of these questions is presented in argument to the effect that no recovery can be had by the plaintiff because his alleged injury was not physical. If an injury must be "physical" in order to be compensable in damages and the plaintiff's injury was not "physical," then he could not recover damages therefor in any event, and a new trial would serve no effective purpose. The defendant's contention that the plaintiff's injury is not of a compensable character is based upon the claim that the medical testimony shows that he is suffering from hypochondria, and that this ailment, being purely the result of emotional or nervous disturbance, or both, does not constitute physical or bodily injury as contemplated by the law of damages and the rule followed by this court. On the other hand, the plaintiff's counsel contend that recovery can be had for physical injury, which is the result of emotional disturbance engendered by an intentional wrong or invasion of right, and cite as authority therefor such cases as Great Atlantic & Pacific Tea Co. v. Roch (Md.) 153 Atl. 22; Price v. Yellow Pine Paper Mill Co. (Tex. Civ. App.) 240 S. W. 588; St. Louis-S. F. Ry. Co. v. Clark, 104 Okla. 24, 229 P. 779; and Stockwell v. Gee, 121 Okla. 207, 249 P. 389.

Many of the cases cited by defense counsel merely follow the rule that damages to the feelings, such as mental anguish, pain and suffering, are noncompensable without proof of actual pecuniary detriment, as do the so-called "telegraph" cases and others upon the question of exemplary damages. See 6 Okla. Dig., Damages, p. 39, Key-number 91. Another line of decisions, examples of which are the "railroad" cases such as St. Louis-San Francisco Railway Co. v. Clark, supra, and Lusk v. Land, 74 Okla. 212, 178 P. 93, together with the cases cited therein, and others such as McPosey v. Sisters of the Sorrowful Mother, 177 Okla. 52, 57 P.2d 617, allow actions for injuries to the feelings without contemporaneous physical injury to the plaintiff. Although it is unnecessary at this point to consider the differences in the rules applied in the two lines of cases, because none of them, in my opinion, are pertinent to the precise question here presented, I merely mention that there is a difference in the nature of the causes of action involved in the two groups of cases, for it is very likely that this has been a factor that has existed unnoticed in the conflicting authorities on the question of recovery for alleged injuries such as the one involved here. Many of the cases dealing with this subject are considered in the annotations appearing at 11 A. L. R. 1119 and 40 A. L. R. 983. In my opinion it would serve no useful purpose to discuss the different rules applied in the various jurisdictions in which conflicting, and in some instances very incongruous, decisions have been rendered upon the question of recovery for alleged physical detriment due to or in the form of nervous or emotional disturbances. As I view the matter, the different rules applied are not diametrically contradictory, but, be that as it may, I believe the injury in question can be properly classified without disputing either of them. To illustrate this point, I refer to the decision in Spade v. Lynn & B. R. R. Co., 168 Mass. 285, 47 N. E. 88, which is generally cited as one of the cases following the rule that there can be no recovery for the physical consequences of fright unaccompanied by a contemporaneous physical injury. There the court said:

"We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance where there is no injury to the person **from without.**" (Emphasis ours.)

As I interpret the term "contemporaneous physical injury," it may include such an injury as the plaintiff in the present case

is alleged to have received. Partly responsible for this view is the recognition that a "physical injury" may be an injury to the nervous system as well as an injury to the bones or muscles. I also recognize that such an injury may be immediate and direct or "contemporaneous" even though the objective symptoms and ultimate results thereof may not appear until long afterwards, and as observed by a layman might seem purely consequential and remote. These natural facts have long been recognized by medical science and have gained some recognition by the courts. For instance, in Kimberly v. Howland, 143 N. C. 398, 55 S. E. 778, 7 L. R. A. (N. S.) 545, the court said:

"We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether willful or otherwise, none the less strongly because the physical injury consists of a wrecked nervous system instead of lacerated limbs. Injuries of the former class are frequently more painful and enduring than those of the latter."

In Watkins v. Kaolin Mfg. Co., 131 N. C. 536, 42 S. E. 983, 60 L. R. A. 617, it was said:

"From common experience we know that serious consequences frequently follow violent nervous shocks caused by fright, often resulting in spells of sickness, and sometimes in sudden death."

In Mack v. South Bound R. Co., 52 S. C. 323, 29 S. E. 905, 40 L. R. A. 679, the court said:

"Now, if the fright was the natural consequence of—was brought about, caused by—the circumstances of peril and alarm in which defendant's negligence placed plaintiff, and the fright caused the nervous shock and convulsions and consequent illness, the negligence was the proximate cause of those injuries."

Consistent with the views already expressed, I differ with those courts which entertain views in conformity with the hereinbefore quoted expressions from Spade v. Lynn & B. R. Co., supra, in which it seems to be assumed that there can be no injury "from without," where there is no apparent physical impact, touching, or contact with the surface of the plaintiff's body. The fallacy of such an assumption, of course, readily appears when we consider the mass of injuries that have been held compensable as the result of conduct constituting an assault in which bodily contact is unnecessary and it is recognized that "physical" injury may result from conduct which produces mere fear of bodily harm. I believe it must be conceded that physical injury may result from the emotions and that a wide array of injuries ranging from minor nervous disorders to fatal attacks of illness, such as is commonly referred to as "heart failure," may be conveyed to the human body "from without" through the nerves or the senses of sight and hearing as well as through physical contact, as where a blow is struck. These truths are very clearly and intelligently dealt with in the following quotation from Sloane v. Southern California Railway Co., 111 Cal. 668, 44 P. 320, 32 L. R. A. 193:

"The real question presented by the objections and exception of the appellant is whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. The interdependence of the mind and body is in many respects so close that it is impossible to distinguish their respective influence upon each other. It must be conceded that a nervous shock or paroxysm, or a disturbance of the nervous system, is distinct from mental anguish, and falls within the physiological, rather than the psychological, branch of the human organism. It is a matter of general knowledge that an attack of sudden fright, or an exposure to imminent peril, has produced in individuals a complete change in their nervous system, and rendered one who was physically strong and vigorous, weak and timid. Such a result must be regarded as an injury to the body rather than to the mind, even though the mind be at the same time injuriously affected. Whatever may be the influence by which the nervous system is affected, its action under that influence is entirely distinct from the mental process which is set in motion by the brain. The nerves and nerve centers of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. **If these nerves, or the entire nervous system, are thus affected, there is a physical injury thereby produced,** and, if the primal cause of this injury is tortious. it is immaterial whether it is direct. as by a blow, or indirect **through some action upon the mind.**"

In my opinion. the foregoing considerations furnish a substantial basis for deciding that injuries to the nervous system are "physical" and that recovery may be had therefor as for other physical injuries. I therefore conclude that one who suffers such injuries may recover damages for the resulting detriment against another who is legally responsible therefor.

By the majority opinion this court holds to be erroneous the trial court's instructions to the effect that the plaintiff was entitled

to recover merely upon proof that the defendant company's representatives, Buerkle and Murrell, knowing that he was sick and against the advice of his physicians, came to his home, entered his sickroom, demanded a release of the policy, served notice of a rescission of the policy, tendered him the amount of money he had paid the company as premiums on the policy, and talked in a loud, boisterous, and obstreperous manner and paced up and down the sickroom, attempting to intimidate and threatening him. In my opinion, that holding is correct upon the principles of law by which this court is bound, but I believe that it is entirely appropriate to reveal what these principles are. Hence the following dissertation.

It is the defendant's contention that none of the acts or conduct mentioned in the court's instructions, when unaccompanied by corporeal force, constitute a legal offense, and therefore that, contrary to said instructions, said conduct furnished the plaintiff no cause of action or basis for a recovery. In the majority opinion, it is intimated that said conduct was not thought to be unlawful in itself, and therefore that it was error for the court to instruct the jury that such conduct, alone, would entitle the plaintiff to a verdict. This proposition is firmly grounded upon the rule adhered to in this state that unless the conduct of the defendant is wrongful in itself, or is performed under circumstances which make it wrongful as a matter of law, the question of liability therefor is a matter for the jury to decide. Such circumstances, in order to make conduct wrongful which otherwise would not be so, must establish negligence or malice. In the present case, we have not said that the facts enumerated in the trial court's instruction No. 5 would or would not constitute a cause of action. We have merely said, in effect, that the conduct therein described was not wrongful in itself, and that the circumstances set forth in said instruction would not make it so as a matter of law. When this has been done, the limit of an Oklahoma court's prerogative is reached. The existence of negligence as well as malice is a question for the jury in a case such as is here presented, for every man is enjoined by law with the duty of using ordinary care to refrain from injury to others, unless relieved of that duty by special circumstances, and "ordinary care" is measured by what an average person of ordinary prudence would do under the same or similar circumstances. See Taylor v. Ray. 177 Okla. 18, 56 P.2d 376; Chicago, R. I. & P. Ry. Co. v. Zirkle, 76 Okla. 298, 185

P. 329; Prickett v. Sulzberger & Sons Co., 57 Okla. 567, 157 P. 356. In my opinion, if Buerkel and Murrell conducted themselves in such a manner that they knew, or as reasonable and prudent men should have known or anticipated, that physical detriment to the plaintiff would result therefrom, and that result did occur, then the wrong is complete and legal responsibility therefor follows, as will hereinafter be more fully demonstrated. See Continental Casualty Co. v. Garrett (Miss.) 161 So. 753, and other authorities hereinafter cited. It is the necessity of a measurement of their conduct by the judgment of a reasonable and prudent man that not only makes the trial court's instructions erroneous, but it also takes this case out of the province of the court and places it within the exclusive prerogative of the jury to determine the primary question of whether a wrong or tort has been committed. This furnishes ample justification for this court's refusal to decide the question of the sufficiency of the evidence to support a cause of action in favor of the plaintiff. However, if, as counsel contends, there is nothing in the conduct of the defendant's representatives, Buerkel and Murrell, that could constitute an actionable wrong, then the case should never have been submitted to a jury, and this court should now reverse the judgment and order a dismissal of the case. For this reason, I feel that the argument with reference to the sufficiency of the evidence should have received express and thorough treatment in the opinion of this court. In view of that absence of an adequate expression of opinion, I will discuss the legal principles which in my opinion would govern a decision on the evidence for whatever value such a discussion may have upon the subsequent trial of this case. As a preface to my discussion, a more detailed statement of the facts of the case than is set forth in the majority opinion should prove helpful.

The plaintiff's alleged cause of action arises out of the efforts of the defendant insurance company to obtain from W. F. Brewer the cancellation of a "noncancellable income policy" issued by said company to him, by the terms of which, for more than a year, it had been paying him an income of $200 per month. The next year, after the company had commenced said payments and after Brewer had been under the care of physicians over a period of months, upon the claim that grounds for cancellation of the policy had been discovered, the company ceased its monthly payments to the plaintiff. Sime time later, after corres-

pondence between them, visits to Brewer by the company's representatives, and oral negotiations, the company had its agent serve a formal written notice of rescission of the policy and tender him a return of the premiums he had paid. It is out of the visit of the company's representatives to Brewer's home for this purpose that the plaintiff's alleged cause of action arose. He claims that the wrongful conduct of these representatives, Murrell and Buerkle, on that visit caused him to suffer a relapse into the illness from which he had been recovering and thereby forestalled his complete recovery and brought upon him a condition of permanent physical disability.

The evidence discloses that more than a year before the visit in question, one of the visitors had been advised to leave Brewer alone and that he needed complete rest and quiet, but that Brewer's condition had been improving in the meantime, and that the company representatives' visit to Brewer's home was at his instance and request; that upon this occasion they attempted to obtain from him a release of the company from further payments under the policy.

The version of what happened upon the occasion of the visit as shown by the plaintiff's evidence is that when Murrell and Buerkle came to Brewer's house, his nurse let them in and showed them into his bedroom, where he was in bed, and they sat down on the bed; that Brewer asked them why their company had not been paying him, and one of them answered that they were through with him; that they further told him the following: That he would find out why he had not been paid; that there was a company official after him; that he was going to sign a release which would relieve the company from further responsibility; that he had had a venereal disease 20 or 30 years ago and it did not show in his policy; that if he did not sign the release, the company would bring suit against him for what it had paid him and would get judgment. The plaintiff testified that when one of the representatives remarked to the other that a judgment against Brewer "wouldn't be any good," the other replied that they could "strip him down to his nightshirt and kick him out." The plaintiff said they also told him that they had high-powered lawyers and that he would not have a chance against them; that they were a big corporation and he was just an individual and would have no chance at all of collecting his insurance from them; that they pulled out a large roll of money and started counting out gold certificates on his bed; that he asked the representative counting the money to "quit and go on," but the representative replied that they had instructions from the home office to count the money out in front of him and that he kept counting until he had finished; that he asked them several times to "go on and leave him alone" but they did not leave until he got out of bed and took them to the door; that during this conversation, one of the company representatives got up and walked back and forth across the room alongside of his bed; that their tone of voice was rough and loud; that they told him that if he didn't sign the release they would "black-ball" him with every other insurance company in the country.

The evidence of the defendant adds no additional facts in any way favorable to the plaintiff's cause.

Plaintiff's counsel deny the defendant's contention that the conduct of Buerkle and Murrell constituted no actionable wrong and assert that they were trespassers ab initio. In reply to this, the defense counsel assert that Buerkle and Murrell could not have become trespassers ab initio, because they entered the plaintiff's home and sickroom by his express permission and committed no legal offense while there.

It is, of course, conceded that the agents' entry was licensed, but permissive entry is no more decisive of the entire issue of trespass than is the absence of a legal offense. A licensee may become a trespasser ab initio when he commits a trespass after receiving admittance. See Olin v. United Electric Light & Power Co., 143 N. Y. Supp. 1012, 82 Misc. Rep. 427; Snedecor v. Pope, 143 Ala. 275, 39 So. 318; Patapsco Loan Company of Baltimore City v. Hobbs, 129 Md. 9, 98 Atl. 239; Ercanbrack v. Clark (Utah) 8 P.2d 1093; Enid, etc., Ry. Co. v. Wiley, 14 Okla. 310, 78 P. 96. Compare Bennett v. McIntire, 121 Ind. 231, 23 N. E. 78, 6 L. R. A. 736; C. F. Adams Co. v. Sanders (Ky.) 66 S. W. 815; Spades v. Murray, 2 Ind. App. 401, 28 N. E. 709; Nichols v. Sonia, 113 Me. 529, 95 A. 209; and see Beers v. McGinnis, 191 Mass. 279, 77 N. E. 768.

It is unnecessary to consider the question of trespass ab initio, however, unless we first discover a trespass. The defense counsel maintain that there was no trespass, because the conduct of Buerkle and Murrell constituted no legal offense. Defense counsel point out, and by our decision we have agreed, that such conduct, in itself, lacks

the elements of anything that has ever been denominated a legal offense, either by common law or by our statutes. However, it by no means follows that this same lawful conduct, if performed in an unlawful manner, would not constitute a legal wrong. This court has quite recently held that mere threats of legal action against a person do not in themselves constitute an actionable wrong (People's Finance & Thrift Co. v. Harwell, 183 Okla. 413, 82 P.2d 994), but this does not indicate that such declarations, regardless of the manner and the circumstances in which they are made, could never be deemed tortious. In fact, we indicated the contrary in the following words of our opinion in the Harwell Case, supra:

"In our opinion, there is a vast difference in causal effect between a simple statement of purpose based on a clear legal right, and aggravated, wanton or abusive language in excess of anything reasonably calculated to state a person's purpose based upon a clear legal right."

It may be well to supplement the above statement at this juncture with the observation that there may not only be a vast difference between the causal effect of the two types of conduct, but there is also a controlling difference between the two in respect to legal responsibility.

It is exceedingly difficult, if not impossible, to imagine any human conduct, though perfectly lawful in itself, which may not be executed in such a manner or under such circumstances as to become unlawful and tortious. Disregarding other torts, lawful conduct, if reasonably calculated to break the law or to injure another in his person or property or to invade his rights in connection therewith, if either of such results is accomplished, has been held to constitute trespass. See 63 C. J. 888 and 891, par. 4; Words & Phrases, First Series, vol. 8, pp. 7088-7095; Reed v. Guessford (Del.) 105 Atl. 428; Carter v. Haynes (Tex. Civ. App.) 269 S. W. 216; Collar v. Ulster & D. R. Co., 131 N. Y. Supp. 56; Shellabarger v. Morris, 115 Mo. App. 566, 91 S. W. 1005. Conduct calculated to breach the peace is an example of the first of these classifications, while instances of "malicious wrong" and "gross negligence" are examples of the latter. See Mangum Electric Co. v. Border, 101 Okla. 64, 222 P. 1002, and the authorities therein cited for the definition of a "malicious wrong." In some jurisdictions, trespass has been held to include conduct reasonably calculated to "lead to" or "threaten" a breach of the peace. See Freeman v. General Motors Acceptance Corp., 205 N. C. 257, 171 S. E. 63; Miller

v. Harless (Va.) 149 S. E. 619; Engle v. Simmons, 148 Ala. 92, 41 So. 1023, 7 L. R. A. (N. S.) 96. And a disturbance of the "peaceful and quiet enjoyment" of the home has been definitely recognized as an invasion of right and a distinct trespass in itself. See Disheroon v. Brock, 213 Ala. 637, 105 So. 899; Patapsco Loan Co. of Baltimore City v. Hobbs, supra; Continental Casualty Co. v. Garrett, supra. Where the cause of action in tort arises out of the commission of a wrong or an act that is unlawful in itself, it need not be proved that the defendant intended to do injury thereby, for every man is presumed to know the law and to intend the legal consequences of his acts. See Roe v. Lundstrom (Utah) 57 P.2d 1128, and the authorities cited in Engle v. Simmons, supra, as well as Barbee v. Reese, 60 Miss. 908. And in such cases proof of pecuniary loss is also unnecessary. In these cases, the right to damages depends upon the injury and not upon the amount of damages, although in some of them the courts have refused to award even nominal damages, where the wrong complained of as distinguished from the damages sustained is trivial. Reed v. Voss, 89 Okla. 20, 213 P. 730. However, where the cause of action arises from conduct which is not unlawful in itself, then both a malicious intent and a material detriment must be shown, though the malice may be implied from the circumstances surrounding such conduct, and in the case of gross negligence, where the conduct can be said to be culpably negligent, the intent is implied and the defendant is held liable for conduct performed under circumstances which warrant the conclusion that it was calculated to produce injury or was engaged in with reckless disregard of its injurious consequences. See 63 C. J. 889, par. 4; Restatement of Law of Torts, sec. 312; Kirby v. Jules Chain Stores Corp., 210 N. C. 808, 188 S. E. 625; Continental Casualty Co. v. Garrett, supra. In the last-cited case, an insurance company was held liable for trespass, where its agent "entered the home of a sick man, known to the offender to be sick, and then and there the intruder, who became such from the moment of his wrongful conduct, insulted the sick man in such a way that as a reasonably prudent person he should have known and anticipated that some physical detriment would probably result."

Force is also a necessary element of trespass, but it is implied where the injury is direct and immediate as distinguished from remote and consequential. Also, actual physical violence is unnecessary and the in-

jury may be the result of mere fright, nervous shock, or excitement or other emotional or mental disturbance produced by words only, without any act of physical violence. See 63 C. J. 890, 891. In addition to Great Atlantic & Pacific Tea Co. v. Roch, supra, and other cases hereinbefore cited, this statement is applicable to the situations that existed in Wilkinson v. Downton, 2 Q. B. 57, and Janvier v. Sweeney, 2 K. B. 316.

In accord with the foregoing principles discussed and authorities cited, it is apparent that, though the defendant's representatives committed no definitely defined legal offense, such as a breach of the peace, or an assault (as was the case in Stockwell v. Gee, supra), yet it cannot be definitely and legally said that they committed no actionable wrong. A determination as to the latter must depend upon the existence of malice or negligence, and (as we have seen) must be performed by the jury.

I am authorized to announce that Mr. Chief Justice OSBORN concurs in the views herein expressed.

HURST, J. I concur in that part of the specially concurring opinion of Mr. Justice DAVISON in which he discusses the law as to liability, but I dissent to that part of the opinion holding instruction No. 5 to be prejudicial and reversible error.

I dissent generally to the opinion of Mr. Justice WELCH.