[No. 1714–3.   Division Three.   June 21, 1977.]

PHYLLIS A. BOWE, *Appellant,* v. EDGAR EATON, ET AL, *Respondents.*

*Gregory L. Lutcher* and *Freise, Lutcher & Llewellyn,* for appellant.

*Hugh B. Horton* and *Horton, Wilkins, Faurholt & Kerr,* for respondents.

MUNSON, C.J.—Appellant Phyllis Bowe appeals the trial court's order dismissing her second and third claims for failure to state a claim upon which relief could be granted.

April 27, 1975, appellant was injured when the car in which she was a passenger was struck by a vehicle driven by defendant Edgar Eaton. The injuries incurred by Miss Bowe were sufficient to temporarily prevent her from working. She depended upon her employment to support not only herself, but also her parents. On May 27, 1975, the respondent insurance company (Eaton's insurer) wrote a letter offering Miss Bowe her wages for 60 1/2 hours of missed work, minus an amount for taxes and other deductions and enclosing a receipt for that advance. She contacted an attorney who wrote the company returning the receipt and seeking an additional $4.70. On June 17, 1975, the company replied, stating they would no longer make advance payments for loss of wages, but that they would be willing to discuss the final settlement. Thereafter, the company refused to advance her any monies for lost wages.

Miss Bowe brought this action, claiming the following damages: (1) against Eaton for personal injuries and mental distress suffered as a result of the automobile collision in April 1975; (2) against the insurance company for mental distress and outrage caused by its failure to advance

payment to Miss Bowe for her lost wages; and (3) against the insurance company for an unfair and deceptive act or practice (RCW 19.86.020) in attempting to deduct taxes and other deductions from her wage compensation and in attempting to force her into an early settlement. The trial court granted the respondent's motion to dismiss appellant's second and third claims on the basis that they did not state a claim.[1]

The appellant argues that her second claim is in the alternative: (1) that as a result of an intentional wrong committed upon her by the company, she was subject to mental suffering and emotional distress which has resulted in physical injury and deterioration; or (2) that the acts of the insurance company "and the manner in which they were done amounted to wilful, malicious, and intentional outrageous conduct" for its advantage and benefit as against the interest of the appellant.[2] In *Hunsley v. Giard*, 87 Wn.2d 424, 431–32, 553 P.2d 1096 (1976), the court, in

---

[1]During the pendency of this appeal, the first claim has been settled.

[2]The plaintiff's complaint reads in part as follows:

"That the defendant State Farm [acting as the insurer of the defendant Eaton] on May 27, 1975 wrote to plaintiff offering to pay her a certain sum for her loss of income suffered by reason of the injuries she received in said accident, a copy of which letter is attached hereto and made a part hereof by this reference.

"That as is indicated in said letter, the defendant State Farm deducted federal income tax and other deductions in arriving at said loss of income figure, which is illegal and contrary to the laws of the State of Washington, and contrary to the rules and regulations of the office of the Insurance Commissioner of the State of Washington. .

"That upon learning that the plaintiff had consulted an attorney, the defendant intentionally declined to pay any sum of money to plaintiff as loss of income reimbursement, despite its knowledge that its insured was clearly liable to defendant, and despite its knowledge that plaintiff, because of the injuries received by reason of the said accident, was totally dependent on said payments as she was unable to work and had no other means of support.

"That such failure to pay loss of income reimbursement as was its obligation so to do, under the terms of its insurance policy with the defendant, Edgar Eaton, subjected the plaintiff to severe emotional and mental anguish, pain, and suffering, which continues unabated to the present and which has further resulted in

an extensive review of the right to recover for the intentional and/or negligent infliction of mental distress, notes that:

> From early in its history, this court has allowed recovery of damages for mental distress, even without physical impact or injury, when the defendant's act was willful or intentional. *See Willson v. Northern Pac. R.R.,* 5 Wash. 621, 32 P. 468 (1893); . . .

(Citations omitted.) *See also Gadbury v. Bleitz,* 133 Wash. 134, 233 P. 299, 44 A.L.R. 425 (1925).

The pleading in the instant case is couched in language "That the aforesaid acts of defendant insurance company were wilfully, intentionally, and maliciously committed . . . to inflict mental suffering and emotional distress on the plaintiff . . ." The complaint does not speak of a negligent act which may result in such mental distress. Restatement of Torts (Second) §§ 313, 436 (1966).

■ To recover for an intentional tort, the appellant must allege that the insurance company willfully committed a wrongful act causing mental anguish and emotional distress. Appellant contends that the wrongful act was the proffering of the advanced payment for lost income in order to make her more agreeable to a quick, low settlement. She further asserts that after she obtained an attorney, the company refused to advance her payment for lost income, in spite of knowledge that she was totally dependent on these payments for her support. We reject this contention;

---

physical injury and deterioration to the plaintiff, and that the plaintiff has been damaged to such an extent, both emotionally and physically, to be almost impossible to set a dollar value on said damage, but for the sake of form and form alone, the plaintiff alleges damage, but generally and specially, as a result of the outrageous conduct of defendant State Farm in the sum of $50,000.00.

"That the aforesaid acts of defendant insurance company were wilfully, intentionally, and maliciously committed by defendant insurer to inflict mental suffering and emotional distress on the plaintiff so as to pressure her to agree to a quick and low settlement due to her financial situation, for the benefit and to the advantage of the defendant insurer.

"That the aforesaid acts of defendant insurer and the manner in which they were done amounted to wilful, malicious, and intentional outrageous conduct on the part of defendant for the benefit and for the advantage of the defendant insurer against the interest of the plaintiff."

it is insufficient to overcome a motion to dismiss because the company had a legal right to act as it did.

Appellant admits that she received a receipt for an advance payment, that it was delivered to her lawyer who wrote the insurance company advising them that they were in error in their calculations, that the appellant had $4.70 additional coming, and returning the receipt therewith. At best, this was a rejection of the insurance company's offer to pay the $113.74 for lost wages. The insurance company responded by advising that they would not renew their offer, but would negotiate with the attorney for a full and final settlement as soon as he felt the appellant's condition had sufficiently stabilized. Thus, when the insurance company's initial offer was rejected, they submitted another offer to negotiate for full and final settlement. The insurance company was obligated to do no more. Its contract runs to its insured, Mr. Eaton. That contract imposed an obligation to deal fairly and in good faith on his behalf and in his interest. *Hamilton v. State Farm Ins. Co.,* 83 Wn.2d 787, 523 P.2d 193 (1974); *Weber v. Biddle,* 4 Wn. App. 519, 483 P.2d 155 (1971); *Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 473 P.2d 193 (1970). Regardless of the choice of language, the insurance company must have breached a duty owed to the appellant before it was liable for damages under a tort theory. The cases appellant cites, relating to the liability of an insurance company for damages as a result of emotional distress, involve disputes between the company and its insured.[3]

The respondent insurance company had no contractual obligation to the appellant; it was under no obligation to

---

[3]*Brown v. First Ins. Co. of Hawaii,* 424 F.2d 680 (9th Cir. 1970); *Silberg v. California Life Ins. Co.,* 11 Cal. 3d 452, 521 P.2d 1103, 113 Cal. Rptr. 711 (1974); *Fletcher v. Western Nat'l Life Ins. Co.,* 10 Cal. App. 3d 376, 89 Cal. Rptr. 78 (1970). *See also Bendalin v. Valley Nat'l Bank,* 24 Ariz. App. 575, 540 P.2d 194 (1975); *Chelini v. Nieri,* 32 Cal. 2d 480, 196 P.2d 915 (1948); *Frishett v. State Farm. Mut. Auto. Ins. Co.,* 3 Mich. App. 688, 143 N.W.2d 612 (1966); *Continental Cas. Co. v. Garrett,* 173 Miss. 676, 161 So. 753 (1935); *National Life & Accident Ins. Co. v. Anderson,* 187 Okla. 180, 102 P.2d 141 (1940); *Pacific Mut. Life Ins. Co. v. Tetirick,* 185 Okla. 37, 89 P.2d 774 (1939).

accept appellant's counter offer. Furthermore, after receipt of the notice that appellant was represented by an attorney, the insurance company was obligated to negotiate with him. 6 Martendale–Hubbell Law Directory, *Statement of Principles American Bar Association, Claims Adjusting* § 5(a–1), at 75c (1976). Finding no legal wrong, the court properly granted the dismissal.

The tort of outrage has been recognized in Washington, *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291 (1975); *see also Freeman v. Intalco Aluminum Corp.,* 15 Wn. App. 677, 684–85, 552 P.2d 214 (1976). The general elements of this tort are: (1) emotional distress intentionally or recklessly inflicted; (2) outrageous or extreme conduct by the defendant; and (3) severe emotional distress resulting from such conduct. *Grimsby v. Samson, supra.* This court must determine whether the complained–of acts state a claim for relief. Restatement (Second) of Torts § 46, comment *h* (1965).[4]

We conclude the pleadings do not set forth such outrageous conduct as to bring this case within the aggravated conduct or acts typified by those cases in support of such a claim. *Fletcher v. Western Nat'l Life Ins. Co., supra; Cluff v. Farmers Ins. Exch.,* 10 Ariz. App. 560, 460 P.2d 666, 39 A.L.R.3d 731 (1969). The aggravated conduct is not present here. Furthermore, the insurance company was entitled to reject appellant's counter offer and to then offer to enter into negotiations for a full and final settlement. Any emotional stress or anguish resulting therefrom is not compensable. *Cf. Peoples Fin. & Thrift Co. v. Harwell,* 183 Okla. 413, 82 P.2d 994 (1938). The court properly dismissed the second claim.

---

[4]"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

■ The trial court properly granted respondent's motion to dismiss appellant's third claim, which asserted a violation of the Consumer Protection Act. (RCW 19.86.020.) The Consumer Protection Act, and more specifically the "unfair or deceptive acts or practices" portion of the act deal solely with consumer transactions in which there is an actual sale of goods or services involving a buyer, a seller, and the goods or services. *Lightfoot v. MacDonald,* 86 Wn.2d 331, 544 P.2d 88 (1976); *Johnston v. Beneficial Management Corp. of America,* 85 Wn.2d 637, 538 P.2d 510 (1975); *cf. Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 554 P.2d 349 (1976). The appellant's dealings with the insurance company involved neither. The trial court's dismissal of appellant's third claim was proper.

Judgment affirmed.

GREEN and McINTURFF, JJ., concur.

Petition for rehearing denied July 13, 1977.