[No. 53513-7-I.    Division One.    November 1, 2004.]

WILLIAM DUSSAULT, *as Guardian, Appellant,* v. AMERICAN INTERNATIONAL GROUP, INC., ET AL., *Respondents.*

864

*William C. Smart* (of *Keller Rohrback, L.L.P.*) and *Jeffrey I. Tilden* and *Franklin D. Cordell* (of *Gordon Murray Tilden, L.L.P.,*) for appellant.

*Curt E.H. Feig* and *William F. Knowles* (of *Cozen O'Connor*), for respondents.

COLEMAN, J. — Sheilana Walker-Van Buren, acting through her guardian ad litem, William Dussault, appeals the dismissal of her claims. Walker-Van Buren sued the defendants after Lexington Insurance Company missed the deadline for the payment of funds under a settlement agreement between Walker-Van Buren and Lexington's insured. The Washington Supreme Court has held that third party claimants such as Walker-Van Buren may not sue an insurer for an alleged breach of the duty of good faith under a liability policy. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 393, 715 P.2d 1133 (1986). We affirm the dismissal of Walker-Van Buren's claim under Washington's unfair practice regulations and her claims for breach of contract and breach of the duty of good faith and fair dealing. We reverse the dismissal of her intentional tort claims.

## FACTS

In June 2000, seven-year-old Sheilana Walker-Van Buren was struck by a car while crossing East Marine View Drive in Everett, Washington. She was left disabled and in need of medical and rehabilitative care. Through her guardian ad litem, Walker-Van Buren sued the city of Everett (City) over the lack of curb extensions and red striping along the curb. She and the City reached a settlement under which insurer Lexington was to pay out the settlement sum no later than

April 15, 2003, which was several weeks after the settlement. According to the settlement agreement, the City and the insurer were to "endeavor to make this payment as soon as practicably possible." The agreement was signed by Walker-Van Buren and the City, but not Lexington.

Walker-Van Buren accuses Lexington of making two intentional misrepresentations to Dussault during the settlement negotiations: (1) Lexington's standard operating procedures prevented it from paying settlement funds before April 15, 2003 and (2) Lexington would make affirmative efforts to make payment before April 15, 2003. Walker-Van Buren alleges that these representations were false and that Lexington had no intention to pay the sum on or before April 15, 2003. According to Walker-Van Buren, she relied upon these misrepresentations when she agreed to the settlement.

Lexington did not make payment until May 1, 2003, and only after a motion was made to enforce the agreement. Walker-Van Buren filed suit against Lexington, its holding company American International Group, and claims administrator AIG Claims Services (hereinafter collectively AIG). She alleged violations of the Washington Administrative Code (WAC), breach of contract, fraud, misrepresentation, breach of the duty of good faith and fair dealing, breach of fiduciary obligations, negligent and intentional infliction of emotional distress, and insurance bad faith. AIG won dismissal of Walker-Van Buren's claims under CR 12(b)(6). Walker-Van Buren appeals the dismissal of her claim under Washington's unfair claims-handling practices regulations, her claim of a breach of the duty of good faith and fair dealing, her breach of contract claim, and her intentional tort claims.

## ANALYSIS

■■ We begin by examining Walker-Van Buren's claim under Washington's unfair claims-handling practices regulations. We apply de novo review to a dismissal under CR

12(b)(6) for failure to state a claim upon which relief can be granted. *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). A plaintiff's allegations are presumed to be true. *Cutler*, 124 Wn.2d at 755.

■ In *Tank*, the Washington Supreme Court held that the state's unfair claims settlement practices regulations, set forth in WAC 284-30-300 through -600, do not create a cause of action against insurers for third party claimants. *Tank*, 105 Wn.2d at 393. Nothing in the language of the regulations gives third party claimants the right to enforce the rules or indicates an intent by the insurance commissioner to create such a right. *Tank*, 105 Wn.2d at 393. The enforcement of these rules on behalf of third parties should be the province of the insurance commissioner, not individual third party claimants. *Tank*, 105 Wn.2d at 393.

Walker-Van Buren requests this court to depart from *Tank* and recognize the right of a third party to bring suit under Washington's unfair claims settlement practices regulations when the third party alleges insurer misconduct. We cannot do so. *Tank* clearly controls, and it bars Walker-Van Buren from bringing suit against AIG under the unfair practices regulations. We therefore affirm the dismissal of Walker-Van Buren's claim under Washington's unfair claims settlement practices regulations.

■ We reach the same conclusion when we analyze Walker-Van Buren's claim of a breach of the duty of good faith and fair dealing owed to her as a third party beneficiary. Third party claimants may not sue an insurance company directly for an alleged breach of the duty of good faith under a liability policy. *Tank*, 105 Wn.2d at 391. An action for breach of good faith against an insurer is limited to the insured. *Tank*, 105 Wn.2d at 392. Third party claimants are not intended beneficiaries of liability policies and are owed no direct contractual obligation by insurers. *Tank*, 105 Wn.2d at 394-95.

Walker-Van Buren argues that a third party claimant who obtains a judgment against an insured or settles a claim with an insured becomes a third party beneficiary of

the liability policy. She acknowledges that *Tank* holds otherwise and urges this court to depart from the Supreme Court's holding. But we cannot circumvent the Supreme Court's ruling. We affirm the dismissal of Walker-Van Buren's claim of a breach of the duty of good faith and fair dealing.

■ We next analyze Walker-Van Buren's claim that AIG breached an oral contract. Walker-Van Buren claims that Lexington made promises during settlement negotiations that it would pay the settlement amount on or before April 15, 2003, and would try to pay early. She argues that this constituted an offer and that she accepted this offer by settling her claim against the City. She argues, therefore, that she had an oral contract with Lexington separate from her settlement agreement with the City. AIG responds by arguing that Walker-Van Buren is only restating a claim that she had a relationship with the insurer. AIG also cites *Marks v. Allstate Ins. Co.*, 153 Ohio App. 3d 378, 794 N.E.2d 129, *appeal denied*, 100 Ohio St. 3d 1508, 799 N.E.2d 187 (2003), for the proposition that because an insurer acts as a fiduciary of an insured during settlement negotiations, an insurer does not become a party of a settlement agreement on the basis of its participation in the negotiations. *Marks*, 794 N.E.2d at 134-35.

A fiduciary relationship exists between an insurer and an insured. *Tank*, 105 Wn.2d at 385. The relationship exists because of the contract between the insurer and the insured, the high stakes for both parties, and the "elevated level of trust underlying insureds' dependence on their insurers." *Tank*, 105 Wn.2d at 385.

We find the holding of *Marks* applicable here. Assuming, for purposes of our review of a CR 12(b)(6) dismissal, that Lexington made representations during negotiations and that Walker-Van Buren relied upon those representations, we hold that a separate oral contract did not exist between Walker-Van Buren and Lexington. An insurer owes fiduciary duties toward the insured. When it convenes settlement negotiations and makes communications to a third

party claimant, it does so as a fiduciary of the insured. It does not receive its own consideration, necessary for a contract, when a third party claimant and an insured reach a settlement agreement. An insurer incurs contractual obligations only when it becomes a signatory to the settlement agreement, reaches a separate release agreement, or takes similar action. We affirm the dismissal of the breach of contract claim.

Regarding the dismissal of Walker-Van Buren's intentional tort claims, Walker-Van Buren argues that her intentional tort claims derive directly from AIG's misrepresentations during settlement negotiations and not from her relationship with the insured. Therefore, Walker-Van Buren argues, her intentional tort claims are not barred by *Tank*. AIG contends that since a liability insurer owes a duty to its insured but no duty to a third party claimant, a third party claimant cannot sue an insurer for torts committed during settlement talks or for any conduct connected with the insurer's duties to its insured. AIG argues that this principle is demonstrated by *Tank* and by cases predating *Tank*. AIG further argues that any other ruling will place insurers in the position of owing conflicting duties to adversarial parties.

■ ■ We reverse the dismissal of Walker-Van Buren's claims of fraudulent misrepresentation and intentional infliction of emotional distress. In *Tank*, the Washington Supreme Court held that insurers owe insureds a duty of good faith. *Tank*, 105 Wn.2d at 385-86. Under this duty, an insurer must deal fairly with an insured, give equal consideration in all matters to an insured's interests, thoroughly investigate an insured's accident or injuries, provide defense counsel that will represent only the insured, disclose all material information to the insured, and refrain from placing its own monetary interest above an insured's financial risk. *Tank*, 105 Wn.2d at 385-86, 388-89. The court further held that insurers do not owe a duty of good faith to third party claimants. *Tank*, 105 Wn.2d at 391-94. However, the *Tank* court did not address the possibility of a

third party claimant's intentional tort claim. Intentional tort claims do not require a preexisting duty. *See* RESTATE-MENT (SECOND) OF TORTS § 46 (1965) (infliction of emotional distress); § 525 (1977) (fraudulent misrepresentation). Because intentional tort claims do not require a preexisting duty, they are not barred by *Tank*.

We recognize that two pre-*Tank* decisions affirmed rulings against third party claimants' intentional tort claims. But we disagree with AIG's argument that they stand for the principle that third party claimants cannot bring a tort claim against an insurer because of a lack of duty. Instead, they merely represent particular fact patterns in which the intentional tort claim could not prevail.

In *Marsh v. General Adjustment Bureau, Inc.*, 22 Wn. App. 933, 592 P.2d 676 (1979), Marsh's outrage tort was defeated through summary judgment because she alleged only that General Adjustment failed to inform her about the statute of limitations and the failure of her insurance claim. *Marsh*, 22 Wn. App. at 933-35. General Adjustment did not owe a duty to inform Marsh about the statute of limitations, and Marsh did not accuse General Adjustment of making affirmative misrepresentations about the statute. *Marsh*, 22 Wn. App. at 935, 937. General Adjustment's silence about the statute of limitations and the rejection of the insurance claim did not rise to the level of outrageous conduct, and Marsh therefore could not establish all the elements of the tort of outrage. *Marsh*, 22 Wn. App. at 937. The appellate court addressed the issue of duty, but only to demonstrate that absent a duty owed to Marsh, a failure to tell Marsh about a statute of limitations did not qualify as outrageous conduct. *Marsh*, 22 Wn. App. at 935-37.

Similarly, in *Bowe v. Eaton*, 17 Wn. App. 840, 565 P.2d 826 (1977), Bowe's intentional tort claims were dismissed because the insurer was accused only of withdrawing an offer of advance payments to Bowe for lost wages. *Bowe*, 17 Wn. App. at 842-45. The Court of Appeals held that the insurer had a legal right to withdraw its offer and therefore could not be liable for outrage or for intentional infliction of

emotional distress. *Bowe*, 17 Wn. App. at 843-45. The court analyzed the lack of duty to Eaton, but only to show that the insurer's alleged actions could be construed as wrongful only if the insurer owed a duty to Eaton. *Bowe*, 17 Wn. App. at 844-45.

We recognize that at least one other state differs on this issue. In *McWhirter v. Fire Insurance Exchange, Inc.*, 1994 OK 93, 878 P.2d 1056, 1059, the Oklahoma Supreme Court ruled that a third party claimant cannot state a claim for an intentional tort because of actions taken during settlement negotiations, since the insurer would not take part in negotiations but for its fiduciary obligations to the insured. We decline to follow this holding because we believe that an intentionally tortious act creates a sufficient basis for a tort claim regardless of the tortfeasor's fiduciary duties elsewhere. In this, we are consistent with *Howton v. State Farm Mutual Automobile Insurance Co.*, 507 So. 2d 448 (Ala. 1987), in which the Alabama Supreme Court held that an insurer is no less liable for its own tortious conduct than any other party. *Howton*, 507 So. 2d at 450-51.

Furthermore, we disagree with AIG's assertion that this ruling will place conflicting duties upon an insurer. To an insured, an insurer owes an elevated duty of good faith. *Tank*, 105 Wn.2d at 385-86. But to a third party claimant, an insurer owes no duty—only a responsibility to refrain from tortious acts. This narrow responsibility does not interfere with an insurer's various "good faith" duties to an insured, such as giving equal consideration in all matters to an insured's interests and refraining from placing its own monetary interest above an insured's financial risk.

■ Last, we consider AIG's related argument that Walker-Van Buren cannot bring a claim of fraudulent misrepresentation unless she was owed a duty to disclose information. The law recognizes two distinct types of fraudulent misrepresentation: affirmative misrepresentation and silence when a duty of disclosure is owed. A duty of disclosure is not an element of fraud when the plaintiff alleges affirmative misrepresentations by the defendant.

*See Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996); *Westby v. Gorsuch*, 112 Wn. App. 558, 570, 50 P.3d 284 (2002), *review denied*, 149 Wn.2d 1008 (2003). A duty to disclose is required only when the plaintiff alleges silence as misrepresentation. *See Oates v. Taylor*, 31 Wn.2d 898, 199 P.2d 924 (1948); *Favors v. Matzke*, 53 Wn. App. 789, 770 P.2d 686 (1989). *Compare* RESTATEMENT (SECOND) OF TORTS § 525 (1977) (a fraudulent misrepresentation does not require a duty of disclosure to create liability) *with* section 551 (1977) (a failure to disclose a material fact can create liability only if the party owes a duty to exercise reasonable care to disclose or if some other circumstance requires disclosure). The ability of a plaintiff to bring a claim for fraudulent misrepresentation without a legal duty to disclose has been explicitly recognized outside the state of Washington. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 38 P.3d 12 (2002). AIG's argument applies only to misrepresentation claims based upon silence when a duty of disclosure was owed. Walker-Van Buren alleges that AIG made affirmative misrepresentations during settlement negotiations. For our review of the CR 12(b)(6) dismissal, we must assume that Walker-Van Buren can prove all the elements of her claim. Because she alleges affirmative misrepresentations, she does not need to establish a duty to disclose.

In conclusion, we affirm the dismissal of Walker-Van Buren's claim under Washington's unfair practice regulations and her claim for breach of the duty of good faith and fair dealing as barred by *Tank*. We affirm the dismissal of her breach of contract claim because no oral contract is created solely on the basis of an insurer's statements during settlement negotiations between the third party claimant and the insured. We reverse the dismissal of her intentional tort claims and remand to the trial court for further proceedings.

Cox, C.J., and SCHINDLER, J., concur.