[No. 52366-5. En Banc. May 19, 1988.]

JAY D. VANDERPOOL, ET AL, *Petitioners,* v. GRANGE INSURANCE ASSOCIATION, ET AL, *Respondents.*

*Lacy, Kane & Richardson, P.S.,* by *Scott M. Kane,* for petitioners.

*Murray, Dunham & Murray,* by *Wayne Murray,* for respondents.

PEARSON, C.J.—This case involves an action by an injured party seeking to sue an employee after releasing the vicariously liable employer from liability. We reverse the Court of Appeals and hold that release of an employer from vicarious liability does not, by operation of law, release the primarily liable employee.

On February 9, 1982, defendant Gerald Curtis, an employee of defendant Richard Goodman (Goodman), d/b/a Dick's Exhaust, backed a car into the path of Yvonne Vanderpool's car. It is uncontroverted that at the time of the accident Mr. Curtis, an agent, was acting within the course and scope of his employment with his principal, Goodman. Defendant Grange Insurance Association (Grange) insured Goodman under a garage keeper's legal liability policy. Mr. Curtis was also insured under that policy as Goodman's employee.

Mrs. Vanderpool sustained injuries to her left knee and property damage to her car. She was taken to a hospital emergency room where X–rays were taken and no fractures were diagnosed. Her knee was wrapped with an Ace bandage and she was advised not to walk on it. Mrs. Vanderpool nonetheless returned to work on crutches the following day.

On February 10, 1982, Mrs. Vanderpool conferred with

Rex Droz, an insurance adjuster for Grange, regarding payment of the medical and car repair bills she had incurred. Mr. Droz met with Mrs. Vanderpool, inspected the damage to her car, and arranged for repairs at the body shop of Mrs. Vanderpool's choice.

On February 20, 1982, Mrs. Vanderpool informed Mr. Droz that although her knee had improved, she was still on crutches. Other than the day of the accident, she had not seen a doctor. Mrs. Vanderpool later consulted her family physician about pain in her knee; her doctor informed her that the knee injury was probably just a bruise and a strained ligament.

In early March 1982 settlement negotiations commenced. The Vanderpools rejected the initial offers made by Mr. Droz. Soon thereafter, the Vanderpools discussed the situation with an insurance adjuster not associated with Grange. He advised them that $1,000, plus car repairs and medical bills, would be a reasonable and fair sum to ask for in settlement.

On March 12, 1982, Mrs. Vanderpool signed a release and future medical agreement, settling for $2,840.16. This amount included payment of $1,000 for pain and suffering, medical bills thus far incurred, rental car expenses and car repairs. In addition, $2,000 was set aside for future medical expenses incurred over the next 18 months. The only party named in the release was "Richard Goodman dba Dick's Exhaust".

Prior to signing the release, Mrs. Vanderpool did not have or seek the advice of an attorney. The parties did not discuss release of Mr. Curtis or compensation for future lost wages. Mrs. Vanderpool testified that she believed Mr. Droz treated her fairly and that she never intended to release Mr. Curtis by signing the agreement, and that she believed her condition would improve. Mr. Droz' knowledge of her condition was limited to what the Vanderpools had told him; he never obtained medical records because Mrs. Vanderpool indicated that her injuries were minor.

The drafts issued as consideration for the release contained language stating that endorsement by the payee constituted release of all claims against all parties associated with the accident. The Court of Appeals noted that both Mrs. Vanderpool and Mr. Droz testified that they believed this language was superfluous and did not alter their formal agreement.

After signing the release, Mrs. Vanderpool sought additional medical treatment. The condition of her injured leg had not improved and surgery was recommended. On May 18, 1982, Mr. Vanderpool approached Mr. Droz to see whether Grange would cover his wife's lost wages while she was having diagnostic knee surgery. Because future lost wages were not covered by the release, Grange refused to reopen the settled claim. The Vanderpools sued, seeking rescission of the release and a judgment for personal injuries and property damages.

The trial court did not find any evidence of intentional fraud, willful false representation or overreaching, but rescinded the release of Goodman on the theory of "negligent misrepresentation by omission". The court held that Mr. Droz had an affirmative duty to inform Mrs. Vanderpool that she could settle the bodily injury and property damage claims separately. The Court of Appeals reversed in an unpublished opinion, holding that Mr. Droz had no affirmative duty under the circumstances to inform the plaintiffs that settlement under one part of the policy could take place while settlement under another section of the policy was held in abeyance. The Court of Appeals also held that the release of Goodman, a vicariously liable solvent principal, also released Mr. Curtis, a primarily liable agent.

Mrs. Vanderpool petitioned for review of one limited issue: whether the release of a principal prior to the filing of a lawsuit where the injured party is unrepresented by counsel also releases the responsible agent who caused the injury. We hold that settlement with a principal does not automatically release the primarily liable agent.

In *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983), we held that settlement with a solvent agent released the vicariously liable principal after the trial court judge determined that the settlement was reasonable. Grange incorrectly contends that *Glover* is controlling authority in this case. When, as in *Glover,* a plaintiff settles with a solvent agent from whom he could have received full compensation, the very foundation of the principal's liability is undermined. A principal is only secondarily liable under a respondeat superior theory. The policy reasons underlying vicarious liability (to afford the plaintiff the maximum opportunity to be fully compensated) are inapplicable when a plaintiff has accepted a release from the primarily liable tortfeasor who was financially capable of making him whole. There is no policy reason to allow that plaintiff to then pursue a claim against the defendant who is only secondarily liable. The *Glover* court is clear that the principal is released by operation of law as a result of a release of the agent only if that agent is solvent. *Glover,* at 722.

Furthermore, the *Glover* result is necessary because a release between a plaintiff and an agent would foreclose any possibility of the principal receiving contribution from his agent. RCW 4.22.040(3) abolishes the common law right of indemnity between passive and active tortfeasors. However, with regard to the abolition of implied indemnity, the Senate Select Committee on Tort and Product Liability Reform Final Report states, "Under current law where the active/passive analysis can be applied, the entire liability can be shifted from the passive tortfeasor to the active tortfeasor." Senate Journal, 47th Legislature (1981), at 636 (the difference now is that the shifting takes place under a comparative fault analysis). This therefore should allow an innocent secondarily liable principal to seek contribution against the agent wrongdoer. However, if a plaintiff settles with an agent, the present statutes extinguish the nonsettling principal's right to contribution from the primarily liable agent. RCW 4.22.060(2). *See also Zamora v. Mobil Oil*

*Corp.,* 104 Wn.2d 211, 220, 704 P.2d 591 (1985). Such inequity led this court in *Glover* to find that settlement with a solvent agent also serves by operation of law to release the principal. *Glover,* at 723. It would be inequitable to allow a plaintiff to recover from a principal after destroying the principal's right to reimbursement from the actual wrongdoer.

■■ However, no such policy reasons exist when a principal is released and a plaintiff sues the actual wrongdoer. There is no reason to apply RCW 4.22.040(1) which allows a court to determine that two or more persons may be treated as a single person. Rather, RCW 4.22.060(2) should be applied. RCW 4.22.060(2) states: "A release . . . entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides."

Releases are contracts and their construction is governed by the legal principles applicable to contracts and they are subject to judicial interpretation in light of the language used. *Stottlemyre v. Reed,* 35 Wn. App. 169, 171, 665 P.2d 1383, *review denied,* 100 Wn.2d 1015 (1983). The pivotal inquiry is whether the parties to the release intended to release both the principal and the agent. If such intent is clear from the language of the release, then both parties are released. However, absent such evidence of intent to release both parties, the statute provides that no other person liable on the same claim is released. RCW 4.22.060(2). The statute is clear that no reservation of rights against another tortfeasor is necessary to retain a cause of action against a nonsettling defendant. This is sound policy because releases frequently are signed by plaintiffs ignorant of the law and without legal advice. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* 335 (5th ed. 1984).

There are many situations where a plaintiff might settle with a principal, but not intend to release the agent. For example, settlement may represent the principal's limit of solvency rather than the fair value of the claim. Settlement

may represent a compromise due to uncertainty as to whether the doctrine of respondeat superior legally holds the defendant vicariously responsible or a plaintiff may believe the primarily liable agent is more culpable than the secondarily liable party. Both the language of RCW 4.22-.060(2) and principles of fairness cause this court to find that a plaintiff should not be deprived of a cause of action against a wrongdoer when the plaintiff has not intentionally surrendered the claim. Any fear of double recovery is unfounded because the amount paid under a release must be credited to the second tortfeasor. RCW 4.22.060(2). Grange argues that at common law the release of either a principal or an agent released the other. However, RCW 4.22.060 has changed this result. The statute is in accord with the approach recommended in the Restatement (Second) of Judgments wherein an injured party may pursue the agent after settling with a principal. Restatement (Second) of Judgments § 51, comment *f* (1982).

It is therefore necessary to apply contract principles to the facts of this case. Parol evidence is inadmissible unless an ambiguity is found in a contract. *McGary v. Westlake Investors,* 99 Wn.2d 280, 286, 661 P.2d 971 (1983) (citing *Poggi v. Tool Research & Eng'g Corp.,* 75 Wn.2d 356, 451 P.2d 296 (1969)). Whether a written instrument is ambiguous is a question of law for the court. *McGary,* at 285. We find the release unambiguous in that it merely releases Richard Goodman, d/b/a Dick's Exhaust, with no mention of the actual tortfeasor, Mr. Curtis. Furthermore, the statute is clear that a release does not discharge others "unless it so provides". RCW 4.22.060(2). Therefore, since release of a principal does not by operation of law release an agent and the release here does not show any intent to release the agent, it only operated to release the principal.

This opinion is not inconsistent with the *Bennett* rule recently enunciated by this court. *Bennett v. Shinoda Floral, Inc.,* 108 Wn.2d 386, 739 P.2d 648 (1987). *Bennett* held that the victims of injury are bound by releases executed when they knew they had been injured, but did not know

the extent or consequences of the injury. But the *Bennett* rule does not address the issue of whether a release of one tortfeasor operates to release a different potentially liable defendant. It is important to remember that the *Bennett* rule rests on a contract theory and is intended to protect the released, settling defendant who is a party to the contract. If the parties wish to avoid the need for a determination whether the plaintiff intended to settle with the agent, then the release can very simply be written to include the agent as a released party.

The Court of Appeals is reversed and the case is remanded to the trial court.

UTTER, BRACHTENBACH, DOLLIVER, DORE, and GOODLOE, JJ., concur.

ANDERSEN, J., dissents.

CALLOW, J. (dissenting)—The majority holds that release of an employer from vicarious liability does not release the primarily liable employee absent a trial court determination that the settlement was reasonable. The majority then states that the Vanderpools sued seeking rescission of the release, a judgment for personal injuries and property damage. The inconsistency of the majority immediately becomes apparent because it is the position of the majority that the release was a release only of the insurance company's responsibility to the principal and that the employee was not affected by the signed release. The majority goes on to state that the issue was whether the release of the principal prior to the filing of a lawsuit, where the injured party is unrepresented by counsel, also releases the responsible agent who caused the injury. The majority holds that under the tort reform act settlement with a principal does not release the primarily liable agent before a trial court judge determines that the settlement was reasonable and satisfied the injured party's claim against the agent and principal. The majority holds that there can be no settlement unless

the injured party is represented by counsel, an action is filed and a settlement hearing has determined that the amount paid by the principal is reasonable.

The majority ignores the fact that the claimant was dealing with an insurance company that was acting for both principal and agent for the single tort. The majority also ignores the fact that the claimant greatly sought and desired the settlement and now seeks further relief claiming previously undiscovered injury.

Thus, we have the majority requiring, even though an injured party was not misled or defrauded, sought the release, acted on the advice of an insurance adjuster who was her friend, and accepted payment as payment in full for all present and future injury based upon the evaluation of her own doctor, that nonetheless a lawyer was required, the action had to be filed and a settlement hearing held to protect the injured party from her own mistake.

It is hard to imagine an approach with more potential to (1) increase the cost of insurance, (2) involve counsel in every settlement, and (3) clog the courts with unneeded hearings.

## THE COURT OF APPEALS OPINION

A few words need to be said about the facts. The Court of Appeals in its unpublished opinion stated:

> Prior to the release, the Vanderpools had not sought legal advice. Although Mrs. Vanderpool was still on crutches, she believed her condition would improve. Mr. Droz's knowledge of her condition was limited to what the Vanderpools had told him; he had not obtained medical records because Mrs. Vanderpool indicated her injuries were minor. The Vanderpools believed Mr. Droz had treated them fairly when the release was signed. Mrs. Vanderpool testified she signed the release because she needed to pay the car bill; the additional work on the car was paid in addition to repair costs attributable to the accident.

The Court of Appeals also stated, correctly, I submit:

an insurer's obligations are to its insured, and not to a third–party claimant, who stands in an adversarial relationship with the insured. As stated in *Murray v. Mossman,* 56 Wn.2d 909, 912, 355 P.2d 985 (1960):

For the company's conduct to be legally wrongful, it must contravene some duty which the law attaches to the relationship between the parties. Liability for negligence is imposed only for injuries resulting from the particular hazard against which the duty of due care required protection to be given. The duty of an insurance company to protect its insured in the settlement of claims cannot consistently be extended to include protection to one who is prosecuting a claim against the insured. *Duncan v. Lumbermen's Mut. & Cas. Co.,* [91 N.H. 349, 23 A.2d 325 (1941)]. Likewise, the duty of the insurance company to use good faith in the handling of a claim against the insured springs from a fiduciary relationship that is entirely lacking between the person injured and the insurance company. *Francis v. Newton,* [75 Ga. App. 341, 43 S.E.2d 282 (1947)].

*See also Marsh v. General Adj. Bur., Inc.,* 22 Wn. App. 933, 935–36, 592 P.2d 676 (1979) (absent circumstances which support estoppel, an insurance company is under no legal duty to notify a third–party claimant of the impending expiration of a statute of limitations or to inform the claimant of the denial of his claim); *Green v. Holm,* 28 Wn. App. 135, 140, 622 P.2d 869 (1981) (an insurance company is under no legal duty to pay medical bills of a third–party claimant until he formally settles, or adjudicates his claim); *Bowe v. Eaton,* 17 Wn. App. 840, 844, 565 P.2d 826 (1977).

Given their adversarial relationship, Mr. Droz was under no legal duty to advise Mrs. Vanderpool her property damage and personal injury claims could be settled separately. More importantly, Grange is not obligated to offer a piecemeal settlement. *Green, supra; Bow, supra.* Furthermore, the record indicates the Vanderpools were predisposed to settle all claims; they testified the funds associated with the personal injury settlement were needed to pay for the additional repairs to Mrs. Vanderpool's car.

Nor is there evidence of overreaching. The court found the Vanderpools were of above average intelligence; the record indicates they bargained at arm's length after

independently investigating the extent of Mrs. Vanderpool's injuries and after determining a reasonable settlement for those injuries.

The claimant petitioned this court for review of one limited issue:

Whether the release of a principal prior to the filing of a lawsuit where the injured party is unrepresented by counsel also releases the responsible agent who caused the injury.

It is interesting to note, in passing, that the majority and the claimant do not realize the inconsistency of their position. The claimant sued to *rescind the release.* The release, on its face, released the employer. They do not challenge the release of the employer, save to claim that it was unreasonable, so that now they can claim the release to be invalid as against the employee. If the release was good only against the employer, there would be no need to rescind it, but only to proceed against the employee. By seeking to rescind the release, the claimants inadvertently acknowledge that they signed the release as a release of all concerned—both the master and the servant.

## VICARIOUS LIABILITY

The majority treats the doctrine of vicarious liability, joint and several liability, and contribution, as if it made no difference which doctrine was involved insofar as the disposition of this case was concerned. Not so.

Vicarious liability is the imposition of responsibility on a master for the wrongful act of a servant because of the relationship between the master and servant; the servant acting for the master and the master therefore being held for the wrong of the servant. Responsibility is imputed to the master–employer because the servant–employee injured another while acting for the master. Only one tortfeasor is involved and the master is held under the doctrine of respondeat superior. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 69, at 458 (5th ed. 1984). When vicarious liability is involved, as here, the

master has not personally caused any injury, but is responsible for the single injury caused by the servant. Thus, to look to both master and servant for recovery when recovery has been accepted from one or the other as payment in full is to allow, as does the majority, two bites of the apple.

Joint and several liability tort actions come about if two or more persons proximately cause an injury. The law imposes liability on each *tortfeasor* for the total injury to the victim.

## Glover v. Tacoma General Hospital

We are faced with the problem of the correct interpretation of the holding in *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983). The court stated that under the facts of that case the trial judge should have dismissed the vicarious liability claim after approving a reasonable settlement between the agent and the principal. The court stated that Washington cases established two propositions: first, if the injured party chooses to seek redress from the agent, the election of remedy bars further action against the principal, and secondly, that a principal's liability may be discharged if a judgment in favor of the agent is on the merits. In essence, the court held that the discharge of a principal is discharge of an agent if settlement from one or the other is accepted in full since there is but one tortfeasor and the law simply protects the victim by allowing the victim to proceed against one or the other or both, but not to seek recovery of more than one's total damages. As aptly stated in *Glover*:

> This policy of full compensation is served when the plaintiff has multiple opportunities to satisfy one judgment. Once the plaintiff agrees to settle with a solvent agent for a reasonable amount, however, no principle of full compensation requires that she also be able to pursue a claim against the principal, since, presumably, she could have obtained full compensation from the agent. This situation is unlike that created by joint tortfeasor claims. When settling with one of a number of joint tortfeasors, the plaintiff may evaluate the relative conduct of each and determine that her best interests are served by

a partial settlement. In such an instance, she might settle for less than the full amount of her damages. Various factors, such as the percentage of such joint tortfeasor's fault compared to the conduct of the nonsettling defendant, may influence this decision. In vicarious liability cases, on the other hand, the claim is based on the conduct of one individual and the liability is imposed as a matter of public policy to ensure that the plaintiff has the maximum opportunity to be fully compensated. When the plaintiff chooses to settle for less than the full amount, when that agent is solvent, the need to pursue the principal does not exist. Once she elects to pursue the agent, full recovery should be obtained from that agent.

*Glover,* at 722–23. I submit that the same policy considerations exist here where the principal settled with the injured party and the injured party accepted payment for the single impact from the principal who agreed to pay on behalf on the agent–tortfeasor. The holding in *Glover* does *not* depend upon the holding or failure to hold a "reasonableness hearing". The disposition is based upon the sensible rationale that acceptance of payment as payment in full from the plaintiff's selected target of either the master or the servant discharges the liability.

*Glover* noted that a release as to an agent should release the principal unless a claimant has settled with an agent who is financially unable to fully compensate the plaintiff. *Glover,* at 723–24. The rationale behind that rule is not changed when it is the principal who accepts a release for full compensation for the agent's wrong nor is the rationale behind the rule changed by the provisions of RCW 4.22-.030–.060. Further, in *Glover,* the multiple tortfeasors were already involved in a lawsuit, which was not the case here.

The *Glover* decision followed by some 2 years the adoption of the present form of RCW 4.22.030–.060. It noted the difference between vicarious liability and respondeat superior and the contribution rules set forth by those sections as they concern themselves with joint and several liability among joint tortfeasors. *Glover,* at 722, says plainly: "This situation is unlike that created by joint tortfeasor claims."

*Glover* notes that the adoption of RCW 4.22.030–.060 does not change the fact that the injured party can seek recovery from either the agent or the principal or both, but once having accepted payment from one cannot continue to use the existence of the other as either an excuse to reopen a claim or to seek additional damages. The ruling in *Glover* is not contrary to the provision of RCW 4.22.030 that if more than one person is liable to a claimant on an individual claim for the same injury, the liability of such persons is joint and several. *Glover* recognizes that insofar as vicarious liability situations are concerned, we have not abandoned the rule as stated in *Johns v. Hake,* 15 Wn.2d 651, 131 P.2d 933 (1942) that the release of the master releases the servant (and vice versa), the liability of the master being derivative. In fact, *Johns v. Hake, supra* at 656, stated:

> A master and his servant are jointly and severally liable for the negligent acts of the servant in the course of his employment. The act of the servant is the act of the master. One damaged by an act of the servant may sue both the master and the servant, or he may sue either separately.

In other words, the policy of the law is for (a) full compensation, (b) an election of remedies, and (c) when settlement in full is made by one, it is settlement for both.

## THE RELEASE

This court has just held in *Bennett v. Shinoda Floral, Inc.,* 108 Wn.2d 386, 739 P.2d 648 (1987) that the victims of injury are bound as a matter of law by releases executed when they knew they had been injured, but did not know the extent or consequences of the injury. In discussing *Finch v. Carlton,* 84 Wn.2d 140, 524 P.2d 898 (1974), in the light of other cases which have discussed the binding nature of releases, to wit: *Beaver v. Estate of Harris,* 67 Wn.2d 621, 409 P.2d 143 (1965); *Pepper v. Evanson,* 70 Wn.2d 309, 422 P.2d 817 (1967), we stated that we recognized that the *Finch* case was unlike prior cases because it involved "'a situation where the parties presumably did not contemplate the possibility of latent injuries.'" We limited *Finch*

to those facts and concluded that a release may be avoided "'where later–discovered injuries were clearly not contemplated by the parties at the time of release.'" *Bennett,* at 393. We concluded:

> When a person signs a release of all claims and has no knowledge that he has any personal injury, as in *Finch,* it is supportable to permit avoidance of the release once it is found that the release was not executed fairly and knowingly. As this court indicated in *Finch,* at 145, in such a case the policy favoring just compensation of accident victims outweighs the policy favoring finality of private settlements. Because the plaintiff is unaware of any personal injury at the time he signs the release, it is unjust to hold him to the release where it is clear that he did not contemplate the possibility that an injury would arise in the future.
>
> In contrast, when a person signs a release knowing that he has been injured, he assumes some risk that his condition may worsen. As we stated in *Beaver v. Estate of Harris,* 67 Wn.2d 621, 629, 409 P.2d 143 (1965): "[I]t is common knowledge that few diagnoses and prognoses concerning injuries to the human body can be reduced to mathematical certainty." By signing a release when he knows he is injured, a person is aware that there is a chance that he could be left insufficiently compensated if the prognosis changes. He knowingly takes a gamble in agreeing to a settlement. This risk that circumstances will change is inherent in the settlement process.
>
> If we allowed a challenge to the validity of the releases in these cases, we would severely impair the policy favoring private settlements and promoting their finality. In every case where the known circumstances of the injury changed after settlement, the validity of the release would be open to question. The parties to many more settlement agreements would be put through the delay and expense of litigation. *See Beaver,* at 627. The absence of finality would greatly reduce the incentive to settle personal injury claims, thus impeding timely compensation to injury victims and adding to the congestion crisis in our courts.
>
> In summary, we conclude that the balance between the policies favoring private, final settlement and the just

> compensation of accident victims can be properly main-
> tained only if the *Finch* test is limited to its facts. We
> hold, therefore, that the *Finch* test applies only to situa-
> tions where there is no known injury at the time the
> release is executed. Because both Bennett and Hoggatt
> knew they were injured when they executed releases,
> *Finch* does not apply to their cases.

*Bennett,* at 395–96. And finally we pointed out that while a
contract is voidable on grounds of mutual mistake, it is not
so voidable by the party seeking to set it aside if that party
bore the risk of mistake by being aware at the time the
contract was made that he had only limited knowledge with
respect to the fact to which the mistake relates, but treated
that limited knowledge as sufficient. This is exactly the case
before us where the claimant chose to bear the risk of
uncertainty. In addition, I note that the majority states
that the "pivotal inquiry is whether the parties to the
release intended to release both the principal and the
agent." It appears clear to me that the claimant signed the
release intending to take payment as payment in full, to
close the matter and to release all involved. It also seems
obvious that only when the claimant wanted more and
secured counsel to find ways to void the release that the
concept of a divisible target came to mind.

In *Monjay v. Evergreen Sch. Dist. 114,* 13 Wn. App. 654,
537 P.2d 825 (1975), Justice Pearson, then speaking for the
Court of Appeals, stated:

> It is of course axiomatic that a plaintiff cannot have a
> multiple recovery for a single wrong. Thus, if payment
> received by the plaintiff from one tort–feasor constitutes
> the full satisfaction of the obligation, he cannot thereaf-
> ter proceed against the other tort–feasors.
> A covenant not to sue will be treated as a release of all
> tort–feasors if reasonably compensatory consideration
> has been paid by one or more tort–feasors to the plain-
> tiff.

(Footnote omitted.) *Monjay,* at 658–59. A footnote to that
case observed that while it was the common law rule that a
release of one joint tortfeasor released all, courts have not

applied the rule when it was clear that the parties intended otherwise. Likewise in *Woods v. Gamache,* 14 Wn. App. 685, 544 P.2d 144 (1975), in an opinion authored by Judge McInturff, a release discharged the defendants from further liability for injuries whether the injuries were known or unknown. It was pointed out that the law favors the amicable settlement of claims when settlement is secured without fraud, misrepresentation or overreaching.

## RCW 4.22.060

We must inquire whether the rule we have just announced is somehow changed by RCW 4.22.060 which reads:

> Effect of settlement agreement. (1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.
>
> . . .
>
> (2) A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

(3) A determination that the amount paid for a release, covenant not to sue, covenant not to enforce judgment, or similar agreement was unreasonable shall not affect the validity of the agreement between the released and releasing persons nor shall any adjustment be made in the amount paid between the parties to the agreement.

In discussing this section and effect, we find in Senate Journal, 47th Legislature (1981), at 636–37, the following section from the section by section analysis of the draft bill, said analysis having been placed into the Senate Journal by the Senate Select Committee on Tort and Product Liability Reform.

Section 14. Effect of Release

This section differs from the Uniform Comparative Fault Act in that the final judgment of the claimant is reduced by the amount paid for release (unless the amount paid was unreasonable at the time the release was granted) instead of the comparative fault of the released party as determined in the lawsuit. This approach was decided upon in order not to discourage parties from settling with claimants. It was a concern of the Committee that if a released party could not be guaranteed that he would not be subject to additional liability at some point in the future depending upon some comparative fault apportionment, it would discourage parties from entering into such releases.

The bill does not establish any standards for determining whether the amount paid for the release was reasonable or not. It is felt that the courts can rule on this issue without specific guidance from the Legislature. The reasonableness of the release will depend on various factors including the provable liability of the released parties and the liability limits of the released party's insurance.

There is a legitimate concern that claimants will enter into "sweetheart" releases with certain favored parties. To address this problem, the section required that the amount paid for the release must be reasonable at the time the release was entered into. Furthermore, it required parties desiring to enter into such releases to give five days notice to all other parties of the terms of the release. A special provision allowing the court to shorten that notice period for good cause is included to

accommodate eve of trial settlements. The potential release party must also secure court approval that the amount paid for the release was reasonable.

The release granted to one party does not discharge any other parties liable upon the same claim unless the release so provides. Under current Washington law, the release of a concurrent tortfeasor does not release other concurrent tortfeasors unless 1) the claimant intended to release all tortfeasors, or 2) the release constituted a satisfaction of the entire obligation. *Callan v. O'Neill,* 20 Wn. App. 32 (1978). The release of one joint tortfeasor, however, releases all tortfeasors regardless of an expressed reservation in the release that it shall not apply to other tortfeasors. *White Pass Co. v. Saint John,* 71 Wn. 2d 156 (1967).

I note that the reasonableness of the release is to depend upon the provable liability of the released parties (not contested here) and the limits of liability in the released party's insurance (there was no question of *exceeding* the policy limits). I submit that the scheme adopted by RCW 4.22.030–.060 contemplated the settlement of filed lawsuits involving joint tortfeasors where contribution claims could be expected but did not intend to require a different result than that *later* reached by *Glover v. Tacoma Gen. Hosp., supra,* or require reasonableness hearings whenever a master was vicariously liable for the tort of his servant and no action had been filed. The majority in actuality has silently overturned the rationale of *Glover.*

A careful reading of RCW 4.22.060 and the Senate Journal analysis shows that the Legislature contemplated at all times joint tortfeasors, not vicariously liable principals. The statute and its analysis also reflect that the legislative concern was with favoritism to one joint tortfeasor as against another and with the problems of contribution between joint or concurrent tortfeasors—considerations which are not present here. While the statute states that the release shall not release others liable on the same claim unless it so provides, the statute is referring to joint tortfeasors who have a liability for contribution and not an agent's liability

to a claimant where that liability has been satisfied by the principal.

It is a basic concept that an injured victim will be compensated in full, no more, no less. It is essential that we recognize the difference between joint and several liability where a number of tortfeasors may have contributed to the injury to the victim and vicarious liability where there has been one tortfeasor (an agent of the principal) who has injured the victim, but only one tortfeasor who can be said to be at fault. Under the concept of vicarious liability the law looks upon the principal as being responsible for the acts of his agent, the master as being responsible for the acts of his servant, and holds that since the master has been benefited by the activity of the servant, the master should be responsible if the servant injures another. This does not absolve the acting servant agent who actually inflicted the harm from liability if the victim is not properly compensated. However, if the victim is compensated by the master and accepts that compensation as payment in full, the servant is absolved of responsibility. And, in real life, as in this case, if the injured party is dealing with an insurance company whose policy covers both, the solvency of agent or principal is immaterial. If the agent has fully compensated the injured party who has accepted payment as payment in full, the injured party cannot then look to the principal for further compensation since the victim has been paid in full and has accepted such payment for his injury by executing a release. *See Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983). The concept of vicarious liability seeks to place responsibility on both the principal and the agent, but does not seek to compensate the victim more than once, and if payment is made by either the master (as in this case) and accepted as payment in full by the injured party, or if payment is made by the agent (as in *Glover*) and payment is accepted as payment in full by the injured party, then the servant in the first instance or the master in the second is discharged. The

rules that apply to vicarious liability have not been changed by the statute.

Where the liability of the master for the tort of the servant is based solely on the doctrine of respondeat superior, the master and servant are not joint tortfeasors (though they have a joint and several liability under RCW 4.22.030) and the valid release of either party operates to release the other. *Gavin v. Malherbe,* 264 N.Y. 403, 191 N.E. 486 (1934); *Hartigan v. Dixon,* 81 Minn. 284, 83 N.W. 1091 (1900); *Spradley v. McCracken,* 505 S.W.2d 955 (Tex. Civ. App. 1974); *Craven v. Lawson,* 534 S.W.2d 653 (Tenn. 1976); Annot., *Release of (or Covenant Not To Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa,* 92 A.L.R.2d 533 (1963); 53 Am. Jur. 2d *Master and Servant* § 408, at 416 (1963).

As stated in *Sade v. Hemstrom,* 205 Kan. 514, 525, 471 P.2d 340 (1970):

> In the Jacobson [*v. Parrill,* 186 Kan. 467, 351 P.2d 194 (1960)], Simpson [*v. Townsley,* 283 F.2d 743, 92 A.L.R.2d 526 (10th Cir. 1960)] and Wilkerson [*v. Lawrence,* 193 Kan. 92, 391 P.2d 997 (1964)] cases the release ran from the injured person to the servant or agent, whereas here the release is to the master. However, the reasoning used in those cases in absolving the master or principal from liability, by reason of the release of the servant or agent, is the same as that used in the great majority of cases from other jurisdictions which hold that in the absence of a specific statute a valid release of one of the parties to a master–servant relationship operates as a release to the other.

*See also Lincoln v. Gupta,* 142 Mich. App. 615, 370 N.W.2d 312 (1985); *Ericksen v. Pearson,* 211 Neb. 466, 319 N.W.2d 76 (1982); *Horejsi v. Anderson,* 353 N.W.2d 316 (N.D. 1984).

The majority indicates that, in a situation such as this where a settlement has been entered into prior to any lawsuit being filed, nonetheless the provisions of RCW 4.22-.030–.060 require that a reasonableness hearing be held. The result of the majority is to require insurance companies

to file actions and have reasonableness hearings conducted where the relationship of principal and agent is unclear or where the possibility of involvement in the cause of an injury by other employees is present.

As noted by the insurance company's brief it is indeed ironic that the claimant can now proceed against the insurance company under the same policy that brought it into the situation in the first place. It is also ironic and illogical that a release having been given to the company's adjuster for full payment for the claim, that the company is not released. Obviously the claimant would not pursue the agent in the absence of the solvent insurance company. This means that in any such situation no settlement could be entered into safely unless (1) the release carefully named each and every possible master and servant who might have been involved or (2) an action was filed and a court had held a time–consuming hearing to rubber stamp that which both plaintiff and defendant desired and had agreed upon as being fair and equitable.

DURHAM, J., concurs with CALLOW, J.