[No. 31349-5-I. Division One. December 27, 1993.]

LYNNE PERKINS, *Respondent,* v. CHILDREN'S ORTHOPEDIC HOSPITAL, *Appellant.*

CAROL THIELKE, *Individually and as Guardian ad Litem, Respondent,* v. CHILDREN'S ORTHOPEDIC HOSPITAL, *Appellant.*

*Heather Houston* and *Gibbs & Houston; William R. Hickman* and *Reed McClure; Dinah C. Pomeroy* and *Rosenow-Johnson-Graffe-Keay-Pomeroy-Monez*, for appellant.

*Anthony A. Russo* and *Russo & Graham; Scott E. Stafne* and *Stafne & Doyle,* for respondents.

FORREST, J. — This appeal presents two issues. First, is the rule set forth in *Glover*,[1] that the release of a solvent agent releases a principal from claims based on vicarious liability for the negligence of the released agent, still a viable theory in this state? Second, if so, in a case where dual agency exists, does the release of one principal and its "agents", without specifically naming them, release the agents and extinguish

---

[1] *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983).

any vicarious liability of the second principal for their acts? We answer both questions affirmatively.

## FACTS

This case involves allegations of medical malpractice. Andrew Ray Beutler was born at University Hospital, now known as University of Washington Medical Center. He was born with congenital heart defects and other physical problems. He was transferred to Children's Orthopedic Hospital, now known as Children's Hospital & Medical Center (Children's Hospital), for specialized care. While there, Andrew underwent surgery to repair some of the congenital defects. He was severely injured during surgery when Dr. Misbach negligently placed a ligature around the descending aorta of Andrew's heart, cutting off all blood supply to the lower extremities. The injury resulted in permanent renal failure.

Four physicians assisted Dr. Misbach with the surgery or followup care. They are Drs. McCroskey and Cohen, members of the University of Washington School of Medicine's residency program; and Drs. Furman and Morray, physicians on the faculty of the University of Washington School of Medicine who were supervising the work of Drs. McCroskey and Cohen at Children's Hospital.

Andrew's mother, Lynne Perkins; grandmother, Carol Thielke; and father, Buzz Beutler, filed a claim for damages with the State for the injuries. Perkins also filed a complaint against Children's Hospital, University Hospital, the Association of University Physicians, and Dr. Misbach and his wife for damages as a result of the negligence. Perkins filed an amended complaint adding Buzz Beutler as an additional claimant. An additional amended complaint added the allegation that Children's Hospital was negligent in nursing and other care it provided.[2]

Later, Carol Thielke, Andrew's grandmother and guardian, filed a complaint for damages on her own behalf and on

---

[2]The record indicates that these allegations are not at issue in the case before this court as they have yet to be tried.

behalf of Andrew. This complaint named the same defendants as those named in the Perkins complaint with the addition of the Childrens/University Medical Group. The four "assisting" physicians have never been named as defendants in any of the pleadings. The cases were consolidated, and all three of the plaintiffs are hereinafter referred to as plaintiffs.

Extensive settlement negotiations began. A special assistant attorney general was appointed to handle the negotiations for the University of Washington, its agents, and employees. Eventually a structured settlement was reached. Plaintiffs and the University, University Hospital, the Association of University Physicians, Childrens/University Medical Group, Dr. Gregory Misbach and his wife, the law firm of the special assistant attorney general, and the agents of any of them came to an agreement in settlement of the claims.

The special assistant attorney general testified that the settlement included the four "unnamed" physicians as agents of the University. The professional liability claims manager for the University also indicated her belief this was true. There is also evidence that at no time did the plaintiffs believe they were settling with Children's Hospital, or its ostensible agents. Although given the opportunity to be a part of the settlement negotiations, Children's Hospital declined to do so. Children's Hospital believed its nursing and administrative staff was not negligent and refused settlement. Children's Hospital claimed it was not liable for the actions of any of the physicians, and believed the settlement agreement covering the University and its agents bore this out.

The release section of the settlement agreement stated in part:

> In consideration of the promises set forth . . ., Andrew Beutler, through his legal guardian Carol Thielke, Carol Thielke, individually, and Lynne Perkins, hereby forever release University Hospital, Association of University Physicians, Childrens/ University Medical Group, Gregory Misbach, M.D., Jane Doe Misbach, their marital community, Williams, Kastner & Gibbs, any related organizations or entities, and their representatives, agents, and assigns, (the "Parties Released") from all claims and causes of action which may ever be asserted by the undersigned Releasing Parties, their executors, administrators, guardians,

successors, assigns, or others, whether presently known or unknown, which in any way arise out of the facts giving rise to the Complaint or Amended Complaints in King County Cause No. 89-2-14175-2 and the Complaint in King County Cause No. 90-2-09673-4 and out of medical care provided by the Parties Released to Andrew Beutler including, but not limited to, all medical care and treatment from May 14, 1987 through January 27, 1988.

This release is intended to cover any and all future injuries, damages or losses not known to the parties to this agreement, but which may later develop or be discovered in connection with the above-referenced medical care including, but not limited to, wrongful death claims.

The guardian ad litem estimated the present value of the settlement to Andrew at $1.3 to $1.42 million, with total settlement to be approximately $1.7 million. The trial court found the settlement reasonable.

Thereafter, plaintiffs moved for partial summary judgment requesting the four "nondefendant physicians" be held to be agents of Children's Hospital. The motion was denied with the exception that the trial court held there was specific agency for administrative but not medical acts or omissions of Drs. Morray and Furman, if any administrative acts or omissions were in existence.

Children's Hospital filed a motion for partial summary judgment which is the subject of this appeal. It prayed for dismissal of the plaintiffs' claims based on Children's Hospital's vicarious liability for the acts and omissions of alleged agents of the University of Washington, specifically Drs. Misbach, Cohen, Furman, McCroskey, and Morray. Children's Hospital based its summary judgment on the holding in *Glover*. Children's Hospital claimed the release of the "specifically named defendant", Dr. Misbach, and the University and its agents, the four physicians, released Children's Hospital as a dual principal for any claims based on vicarious liability.

Plaintiffs opposed this motion, first arguing *Glover* has been overruled and is no longer viable. In addition, they claimed that even if *Glover* was still applicable, the dual agent physicians (Drs. Cohen, Furman, McCroskey, and Mor-

ray) who were not specifically identified in the release could still provide the vehicle for vicarious liability of Children's Hospital.

The trial court found that application of *Glover* was appropriate under certain fact situations. Thus, the court granted the partial summary judgment motion of Children's Hospital as to its vicarious liability for the acts and omissions of Dr. Misbach. However, the court denied the motion to dismiss Children's Hospital's potential vicarious liability for the acts of the other four doctors, finding there were material questions of fact as to the agency relationships of the unnamed physicians to the different hospitals.

Children's Hospital appeals the denial of the dismissal regarding the acts and omissions of the four unnamed doctors. Perkins cross-appeals the holding that *Glover* is still viable, thus dismissing Children's Hospital for any vicarious liability for the acts of the primary surgeon, Dr. Misbach.

## PLAINTIFFS' CROSS APPEAL

For purposes of analytical clarity we choose to address plaintiffs' cross appeal first. The trial court relied on *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983), in granting summary judgment dismissing plaintiffs' claim against Children's Hospital based on vicarious liability for Dr. Misbach's negligence. Plaintiffs acknowledge that, if viable, *Glover* requires the dismissal, but urge that *Glover* is no longer good law.

As to the principal and agent liability involved here, the facts of *Glover* are strikingly similar to the facts before us. In *Glover*, the plaintiff sued two physicians and Tacoma General Hospital for the alleged negligence of the doctors in administering anesthesia during surgery at the hospital. One doctor was a professor at the University of Washington School of Medicine supervising the work of the other doctor who was in residency and receiving further training at the University of Washington School of Medicine. The plaintiff settled with the doctors expressly reserving the right to proceed against the hospital. The hospital's motion to dismiss

the claim based on vicarious liability was denied. On appeal, the Supreme Court reversed and held that the release of the doctors released the hospital from any claim based on vicarious liability.

In the case at bar, Dr. Misbach is a named defendant and a party to the settlement agreement. Therefore the case is on all fours and as long as *Glover* remains good law, the motion dismissing plaintiffs' claims against Children's Hospital based on Dr. Misbach's negligence was properly granted.

■ Plaintiffs contend *Glover* has been overruled *sub silentio* by *Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988); *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 756 P.2d 111 (1988); *Seattle Western Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 750 P.2d 245 (1988); and *Kirk v. Moe*, 114 Wn.2d 550, 789 P.2d 84 (1990).[3] Taking the cases in chronological order confirms our conclusion that *Glover* has not been overruled.

The *Seattle Western* case involved claims and cross claims in a multiparty action growing out of a contract for construction of a bridge. The significant language in *Seattle Western* is the following:

> The holding of *Glover* must be read in light of RCW 4.22-.060(2) which applies directly to the effect of settlements on nonsettling defendants. That subsection provides:
>> A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides.

---

[3]Plaintiffs also cite without analysis *Pickett v. Stephens-Nelsen, Inc.*, 43 Wn. App. 326, 717 P.2d 277 (1986) and *Robinson v. McReynolds*, 52 Wn. App. 635, 762 P.2d 1166 (1988). Court of Appeals cases cannot, of course, modify the Supreme Court cases principally relied upon. In any event, neither case addresses the point here at issue. In *Robinson* the appellate court held that the verdict against one defendant would not be reduced by the amount of settlement against another defendant when the claims were separate. In *Pickett* the court held that a principal is not released from liability by a settlement agreement with an agent which specifically notes the agent is financially unable to fully compensate the plaintiff; the latter holding is of course perfectly consistent with *Glover*'s limitation of release to the case of a solvent agent.

> Thus the presumption is that TAMS was not released by SWI's agreements with the other defendants *unless this case falls within the narrow limits of Glover*. It does not. *Glover* was a case of respondeat superior. SWI's claims [against some defendants] are distinct and separate from its claims against TAMS.

(Italics ours.) *Seattle Western*, 110 Wn.2d at 5. Limiting a case to the facts and issues before it is basic to sound legal analysis and by no stretch of the imagination can it be considered overruling the cited case.

The *Vanderpool* court held that a plaintiff who settled with, and released, an employer from vicarious liability does not release the primarily liable employee *unless the release expressly so provides*. The *Vanderpool* court readily and clearly distinguished *Glover*:

> The *Glover* court is clear that the principal is released by operation of law as a result of a release of the agent only if that agent is solvent.
> Furthermore, the *Glover* result is *necessary* because a release between a plaintiff and an agent would foreclose any possibility of the principal receiving contribution from his agent. RCW 4.22.040(3) abolishes the common law right of indemnity between passive and active tortfeasors. . . . [I]f a plaintiff settles with an agent, the present statutes extinguish the nonsettling principal's right to contribution from the primarily liable agent. RCW 4.22.060(2).

(Citations omitted. Italics ours.) *Vanderpool v. Grange Ins.*, 110 Wn.2d at 487. The holding that the release of a principal does not release the primarily responsible agent clearly does not overrule *Glover*. Indeed, the court in *Vanderpool* said that the *Glover* result is necessary.

In *Crown Controls*, the case principally relied upon by the plaintiffs, the court abandoned the longstanding Washington rule of election of remedies as applied to principal and agent. Crown Controls sold to an agent of an undisclosed principal. Learning the identity of the principal, Crown Controls sued and obtained a judgment against the principal but was unable to collect. Crown Controls then sued the agent and obtained a judgment against him. The agent appealed relying on the "election of remedies" which required a plaintiff to choose between

suing the agent or the principal. The court determined the doctrine was outdated and unfair and affirmed the judgment against the agent. Insofar as *Glover* relied on the election of remedies doctrine, that ground would no longer support the judgment as plaintiffs contend. Nevertheless, *Glover* was not expressly overruled, nor have subsequent cases treated it as overruled. It should be noted that *Crown Controls* is a creditor's action and the basis of both the suit against the principal and the agent was an independent contract obligation running to the creditor. The case before this court is a tort case in which the liability of the principal (Children's Hospital) rests on the hospital's vicarious liability for the negligence of its agent Dr. Misbach and there is no independent liability based on his acts.[4]

Plaintiffs assert the policy espoused in *Crown Controls* is one to ensure that plaintiffs are made whole. At the same time the court ensures there will be no double recovery by providing that a creditor can only collect once, even if there are two judgments involved. Plaintiffs fail to note that *Glover* also recognizes the principle of full recovery by providing that it is only when the settling agent is "solvent" that the plaintiff loses his rights against the principal. The *Glover* court in effect treats the settlement, once approved in a reasonableness hearing, as the equivalent of a collected judgment in the *Crown Controls* fact situation. The holding prohibits collection from the principal, the hospital, of an amount in excess of the settlement, just as *Crown Controls* prohibits collection against either the principal or agent of an amount in excess of the judgment. *Crown Controls* did not overrule *Glover* expressly nor do we find anything inconsistent between a rule that a plaintiff who releases a solvent agent releases the principal from vicarious liability and a rule which provides that a creditor may sue the agent and the principal independently provided that there shall be only one recovery.

---

[4] As stated previously, there remain unadjudicated claims not before this court as to the liability of Children's Hospital for the administrative and nursing care provided.

In *Kirk*, the most recent Supreme Court case considering the issue, the court held that when an injured party releases both the principal and agent from liability, but the agent does not participate in the settlement agreement, the agent is not discharged from liability to the principal for contribution or indemnity under RCW 4.22.060(2). Obviously, the case deals with the right of the principal against his agent, not of plaintiff's right against the principal based on the agent's negligence. The *Kirk* holding protects the principal's right of contribution which is one of the cardinal underpinnings of *Glover* thus supporting, rather than undermining, *Glover*.

Plaintiffs seek to draw comfort from the following portion of a citation to authority in *Kirk v. Moe*, 114 Wn.2d at 553, "*Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 715, 658 P.2d 1230 (1983), *overruled on other grounds in Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988)."[5] Although the purpose of the statement is not absolutely clear, it appears to refer to statements about the election of remedies found in *Glover*. In any event, the court goes on to discuss *Glover* at some length.

Moe relies heavily on *Glover v. Tacoma Gen. Hosp.*, *supra*, and particularly one phrase, nine words, out of a 15-page opinion. That phrase is: "contribution and indemnity rights do not sur-

---

[5]For clarity, we quote the entire passage in which this comment is made.
"RCW 4.22.040(2) conditions contribution recovery upon two factors, to wit:
    "Contribution is available to a person who enters into a settlement with a claimant only (a) if the liability of the person against whom contribution is sought has been extinguished by the settlement and (b) to the extent that the amount paid in settlement was reasonable at the time of the settlement.
"The purpose of the conditions in RCW 4.22.040(2) is apparent. First, the party against whom contribution is sought is to be protected from double liability, *i.e.*, to the settling tortfeasor who seeks contribution and to the injured plaintiff. The potential liability to the injured party is eliminated if the nonsettling tortfeasor has been released by the injured party. The amount of the contribution is protected by the requirement that the amount paid be reasonable at the time of settlement. Comment, *Contribution Among Tort-feasors in Washington: The 1981 Tort Reform Act*, 57 Wash. L. Rev. 479, 494 (1982). *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 715, 658 P.2d 1230 (1983), *overruled on other grounds in Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988)."

vive a settlement." At first blush this phrase seems to support Moe's position, but an examination of the facts of *Glover* demonstrates that that phrase should not be taken out of context. In fact, the *Glover* facts are exactly opposite those of the present case. In part, *Glover* concerned a potential contribution claim by a nonsettling tortfeasor who did participate in the settlement. The court did not permit a contribution claim against those tortfeasors who did not participate in the settlement.

Indeed, Moe ignores language which appears earlier in the *Glover* opinion, to wit: "For instance, if A and B both cause injury to C, and A settles with C and extinguishes B's liability to C, A may recover contribution from B; but only if the amount he paid was reasonable." Applied here, that *Glover* language means that A (Kirk vicariously) and B (Moe primarily) both injure C (Zucker) and A (Kirk) settles with C (Zucker) and extinguished B's (Moe's) liability to C (Zucker), A (Kirk) may recover contribution from B (Moe).

(Citations omitted.) *Kirk v. Moe*, 114 Wn.2d at 555-56. Whatever may have been meant in the first reference to *Glover*, the discussion makes it absolutely clear that *Glover* is not overruled but remains the correct statement of the law as to the facts presented.

This fact is borne out by the recent decision of *Adams v. Johnston*, 71 Wn. App. 599, 860 P.2d 423 (1993). That matter arose out of the treatment of Steven Adams at the Comp-Care alcohol treatment facility at Deaconess Medical Center in Spokane. Before treatment could be completed Adams left the facility. Some 2½ months later Adams shot his father causing a traumatic brain injury. Both Adams and his family settled with CompCare and Dr. Johnston, the onetime physician/director of CompCare. Deaconess opposed the settlements, but they were approved. Deaconess then moved for partial summary judgment contending that any claims that Deaconess was vicariously liable for the acts of the settling defendants should be dismissed. The trial court denied the motion, but was reversed on appeal. The court cited *Glover* and then explained:

*Glover* concluded that the very foundation of a principal's secondary liability would be undermined if a primarily liable agent, capable of making the plaintiff whole, were released and the principal pursued for any remaining damages. *Vanderpool*

*v. Grange Ins. Ass'n*, 110 Wn.2d 483, 487, 756 P.2d 111 (1988) reconfirmed *Glover*, stating such result is necessary under the tort reform act because a release between a plaintiff and an agent forecloses any possibility of the principal receiving contribution from his agent.

We turn, then, to the pertinent question of whether, as a matter of undisputed fact, if the settling defendants were agents, were they solvent?

*Adams v. Johnston*, 71 Wn. App. at 609.

In the case before us there has never been a question regarding the solvency of the settling defendants. The *Glover* facts are indistinguishable from the facts before us. The trial court did not err in applying *Glover* to hold that Children's Hospital was discharged from any claim of vicarious liability based on the negligence of Dr. Misbach.

### Appeal of Children's Hospital

Children's Hospital appeals from the portion of the summary judgment denying dismissal of all vicarious liability claims against Children's Hospital based on the alleged negligence of Drs. Cohen, Furman, McCroskey, and Morray.[6] For the purpose of this motion Children's Hospital acknowledged the doctors were at least dual agents. Application of *Glover* mandates dismissal of vicarious liability based on the negligence of Dr. Misbach, a named defendant. Therefore, the remaining issue is whether the failure to specifically name the "unnamed physicians" in the release excludes them from its operation.

The material portion of the release provides that the plaintiffs release the University defendants and "their representatives, agents, and assigns, (the Parties Released)".[7] Although

---

[6]For convenience we sometimes refer to these doctors as the "unnamed physicians" because they were neither named as defendants in the complaints nor were they named as parties in the release agreement.

[7]For context we again set forth the entire paragraph:

"In consideration of the promises set forth in paragraph 1 above, Andrew Beutler, through his legal guardian Carol Thielke, Carol Thielke, individually, and Lynne Perkins, hereby forever release University Hospital, Association of University Physicians, Childrens\University Medical Group, Gregory Misbach, M.D., Jane Doe Misbach, their marital community, Williams, Kastner & Gibbs,

the trial court found material issues of fact as to the agency of the unnamed doctors, plaintiffs have not identified any such factual issue on appeal. It is undisputed that similar to Dr. Misbach, Drs. Furman and Morray are full-time professors at the University of Washington School of Medicine, although as part of their duties Drs. Furman and Morray were providing medical services at Children's Hospital at the time in question. We find that as a matter of law they were agents of the University defendants. Drs. McCroskey and Cohen were resident physicians/students in medical training at the University of Washington School of Medicine. Plaintiffs make no effort to distinguish between the two sets of doctors as far as agency is concerned nor do we see any difference for the purposes of the issues here at hand. In both cases these physicians treated patients as part of their teaching and training at the medical school. Accordingly, we hold they too are agents of the University defendants. Indeed, plaintiffs concede they are dual agents.

If the unnamed doctors had been named, their situation would be identical to Dr. Misbach and, pursuant to *Glover*, Children's Hospital would be discharged from vicarious liability for any acts of negligence, if negligence existed. If the doctors are included in the term "agents", the legal result will be the same as if named, and the same result would follow as to Children's Hospital's liability.

■ A straightforward literal reading of the document which releases the "agents" of the University defendants includes all who, like the unnamed doctors, are in fact agents of the University defendants. No authority is cited holding that the general descriptive term "agents" used in a release is mean-

---

any related organizations or entities, and their representatives, agents, and assigns, (the "Parties Released") from all claims and causes of action which may ever be assessed by the undersigned Releasing Parties, their executors, administrators, guardians, successors, assigns, or others, whether presently known or unknown, which in any way arise out of the facts giving rise to the Complaint or Amended Complaints in King County Cause No. 89-2-14175-2 and the Complaint in King County Cause No. 90-2-09673-4 and out of medical care provided by the Parties Released to Andrew Beutler including, but not limited to, all medical care and treatment from May 14, 1987 through January 27, 1988."

ingless and without legal effect, and that to be released all agents must be named.

In response to this literal reading, the plaintiffs urge that the resulting release of Children's Hospital was not the intent of the parties. Even assuming that *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990) requires an examination of the plaintiff's subjective intent as to meaning of the release, under these circumstances the plaintiffs' intent cannot control the legal consequences of the executed release. In *Glover* the plaintiff's intent not to release the hospital was *expressly* stated in the release. Nonetheless, the *Glover* court held the hospital was released as a matter of law following the release of the doctors/agents. The same result follows here.

The fact that the University defendants were not concerned about securing a release of Children's Hospital and were aware of plaintiffs' intent to pursue some action against Children's Hospital is irrelevant to the legal effect of the release. In addition, the fact that the unnamed doctors did not intend to settle and/or did not approve of the settlement does not alter the legal effect of the release.[8] Like the plaintiffs' intent, the intent of the unnamed physicians is irrelevant.[9] Further, plaintiffs cite no case holding that an agent is not released merely because he did not participate in, or consent to, the release.

Following the settlement, plaintiffs asserted for the first time that the dual agency of the unnamed doctors between Children's Hospital and the University defendants can be split so as to allocate responsibility for the medical care of Andrew to Children's Hospital and the teaching/training relationship to the University defendants. The natural implica-

---

[8] One might surmise that if the doctors had been named as defendants or if, as plaintiffs' theory would permit, they were subsequently named as defendants, their views about the release might change.

[9] For example, if IBM is sued for the negligence of a truck driver and chooses to settle with the claimant and secures a release for itself, its agents and employees, the settling plaintiff has no right to sue the employee because he did not approve of the settlement.

tion of that position is that the University would not be liable for the negligence of any of the doctors, including Dr. Misbach. This is a position the plaintiffs would only espouse after settlement. No case from Washington or, indeed, from any jurisdiction is cited to require or make such a division or the allocation of responsibility of a dual agent. We do not see any policy reason to do so. In these circumstances it would be particularly inappropriate. In many respects the working arrangements between Children's Hospital and the University defendants, at least as far as disclosed by the record, are analogous to a joint venture, with the University contributing medical personnel and receiving extensive training opportunities for its students without responsibility of operating the hospital, and Children's Hospital being able to offer outstanding medical care for unusual and difficult cases without being required to fully staff its hospital or the necessity of developing working relationships with a number of outside specialists. Plaintiffs make no effort to delimit the possible consequences of such a rule. In the absence of citation of authority we need address it no further.[10] We hold that on these facts there is no division or allocation of vicarious liability for the acts of the dual agents.

This result is not unfair to plaintiffs. In the face of *Glover*, plaintiffs are charged with the knowledge that as a matter of law they cannot release the doctors/agents and preserve the vicarious liability of the hospital/principal. If plaintiffs truly intended not to release Drs. Cohen, Furman, McCroskey, and Morray they could easily have added the phrase, "except Drs. Cohen, Furman, McCroskey, and Morray" immediately after the word "agents" in the release. Whether the University defendants would have agreed to such a release may be doubtful, but the release, if accepted, would have expressed what plaintiffs now claim their intent was. If rejected, the plaintiffs would realize they cannot have it both ways: release the unnamed agents to achieve a settlement with the University defendants, but rely on their alleged negligence

---

[10] *See generally American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 7, 802 P.2d 784 (1991).

for vicarious liability against Children's Hospital. Further, there is no merit to a claim that the word "agents" did not include the unnamed doctors. Plaintiffs cite no authority for the proposition that the word "agents", used in the context of a release, would not include individuals with a relationship to a principal similar to that between the unnamed doctors and the University.

We hold the executed release, by its express terms, released the unnamed doctors from liability to the plaintiffs, and by operation of law the release of the doctors in turn released Children's Hospital from any claim of vicarious liability based upon the negligence, if any, of those doctors.

The trial court's summary judgment dismissing plaintiffs' vicarious liability claims against Children's Hospital based on Dr. Misbach's negligence is affirmed. The trial court's denial of Children's Hospital's motion to dismiss all vicarious liability claims based on the alleged negligence of Drs. Cohen, Furman, McCroskey, and Morray is reversed with directions to dismiss the claims.

The case is remanded for further proceedings consistent with this opinion.

SCHOLFIELD and KENNEDY, JJ., concur.

Reconsideration denied March 24, 1994.